Submitted January 6, affirmed April 21, 2021

Xin HICKEY,
*Plaintiff-Respondent,*

*v.*

Joshua SCOTT,
Jamie Katherine Scott,
and all other occupants,
*Defendants-Appellants.*

Lincoln County Circuit Court
19LT18673; A173328

492 P3d 123

In this action for residential forcible entry and detainer (FED), plaintiff landlord successfully sought to evict defendant tenants for nonpayment of rent. Defendants appeal, assigning error to the trial court's denial of their motion to dismiss. Defendants moved to dismiss on the basis that plaintiff's written notice of intent to terminate for nonpayment of rent was invalid, due to failing to "specify the amount of rent that must be paid *** to cure the nonpayment of rent," as required by ORS 90.394(3). Specifically, defendants argued that the notice was invalid because they actually owed less than the amount specified in the notice. The notice specified that the amount owed was $1,700, whereas defendants contended that they owed either nothing or less than $1,700, and the trial court ultimately found that they owed $1,175. *Held*: The trial court did not err in denying defendants' motion to dismiss. Under ORS 90.394(3), a notice must specify the amount of rent that the landlord is demanding to cure the rent default and avoid an eviction action. If the landlord is incorrect about the amount of rent due, the landlord may lose on the merits in an FED action (if the tenant has paid the amount actually due), but that does not render the underlying notice invalid.

Affirmed.

Philip L. Nelson, Senior Judge.

Blair Bobier, Emily Rena-Dozier, and Legal Aid Services of Oregon filed the brief for appellants.

No appearance for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

In this action for forcible entry and detainer (FED), plaintiff landlord successfully sought to evict defendant tenants from a rental unit for nonpayment of rent. Defendants appeal, assigning error to the trial court's denial of their motion to dismiss. Defendants argue that plaintiff's written notice of termination for nonpayment of rent was invalid because it did not "specify the amount of rent that must be paid *** to cure the nonpayment of rent," as required by ORS 90.394(3).[1] More specifically, defendants argue that the notice was invalid because it specified the amount of rent that had to be paid as $1,700, when, in fact, the FED court later found that the amount actually due was $1,175. In defendants' view, they were entitled to dismissal of the FED action, based on invalid notice, once the court determined that they owed a lesser amount of rent than the landlord claimed. We conclude that the trial court did not err in denying defendants' motion to dismiss and, accordingly, affirm.

                                  FACTS

"Generally, we review rulings in residential FED actions for errors of law." *Gibson v. Walsh*, 308 Or App 119, 120, 480 P3d 990 (2020). We state the facts as the trial court found them, noting that, in this case, none of the findings are challenged. *Id*.

Defendants rented an apartment from plaintiff beginning in October 2019. It was a month-to-month tenancy. Under the rental agreement, defendants were to pay a $1,500 security deposit and $850 monthly rent. When they moved in, defendants paid $525 toward their October rent. In late October, the Siletz Tribal Housing Department (STHD) paid plaintiff $1,500 as a security deposit on defendants' behalf. No further payments were made.

On December 17, 2019, plaintiff mailed a notice of nonpayment of rent to defendants. The notice stated that

---

[1] In connection with the COVID-19 pandemic, ORS 90.394 was temporarily amended to require longer notice periods. *See* Or Laws 2020, ch 3, § 10 (3rd Spec Sess). The length of the notice period is immaterial to the issue on appeal, so we cite the current statute, rather than the earlier version under which plaintiff's FED complaint was decided.

defendants owed $1,700 in unpaid rent—$850 for October, and $850 for November—and that the rental agreement would terminate unless the unpaid rent was paid by December 27, 2019, at 11:59 p.m. Defendants paid nothing, and plaintiff initiated an FED action on December 30, 2019.

The FED trial was held on January 27, 2020. In opening statement, defendants said they would move to dismiss on the basis that they owed no rent for October and November, because they had paid $525 personally and STHD had paid $1,500 on their behalf, which was more than the $1,700 rent for those two months. The court then heard the evidence, which raised several fact disputes. Defendants put on evidence that they paid $525 rent in early October and that STHD paid $1,500 rent on their behalf in late October. Plaintiff put on evidence that defendants paid $425 rent in October (half of the October rent), that defendants paid a $100 cleaning deposit at the same time, and that STHD paid $1,500 for defendants' security deposit. At the close of evidence, defendants renewed their motion to dismiss, arguing that they owed no rent for October and November. In the alternative, they argued that, in any event, they owed less than $1,700, entitling them to dismissal based on invalid notice, because the notice did not state the true amount owed.

The trial court took the matter under advisement and then issued a letter opinion later the same day, in which it denied defendants' motion to dismiss and ruled in plaintiff's favor on the FED complaint. Factually, the court found that defendants had paid $525 toward October rent, which plaintiff failed to credit, and that STHD had paid $1,500 for defendants' security deposit. Thus, the court found that plaintiffs owed $1,175 in overdue rent for October and November. Legally, the court denied defendants' motion to dismiss, rejecting their argument that plaintiff's termination notice was "invalid" because it stated that $1,700 was due. The court explained its understanding of the statute as being that, if rent was overdue and there was a dispute about the amount, the tenant could pay the actual amount due and successfully defend against eviction, but the tenant

could not pay nothing and avoid eviction based on a discrepancy between how much the landlord claimed was due and how much was actually due. Because defendants owed $1,175 in back rent when plaintiff gave notice of termination, and they paid nothing, the court entered judgment for plaintiff.

Defendants appeal, assigning error to the denial of their motion to dismiss.

## ANALYSIS

The issue on appeal turns on the correct construction of ORS 90.394(3), a provision of the Oregon Residential Landlord and Tenant Act (ORLTA). As with all questions of statutory construction, we seek to ascertain the intent of the legislature by examining the text and context of the disputed statutory provision, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Unless there is reason to believe otherwise, we presume that words of common usage were meant to have their plain and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Subject to exceptions not applicable here, the ORLTA "applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." ORS 90.115. ORS 90.394 permits a landlord to terminate a rental agreement for nonpayment of rent and take possession of the premises as provided in ORS 105.105 to 105.168. The landlord must first deliver a written notice of nonpayment of rent and intention to terminate, with the required amount of notice depending on the nature of the tenancy and the day of the rental period when the notice is sent. *See* ORS 90.394(1)-(2). The notice must state that the landlord intends to terminate the rental agreement unless the rent is paid within the notice period. *Id*. The notice "must also specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent." ORS 90.394(3).

The latter requirement to specify the amount of rent and deadline to cure was added in 2005 as part of a group of ORLTA amendments. A representative of the landlord-tenant coalition that negotiated, drafted, and proposed the 2005 amendments to the legislature testified that the language now codified in ORS 90.394 would require the landlord to "describe a cure" by stating the "specific amount of money" that needed to be paid to cure the tenant's violation of the rental agreement by nonpayment of rent:

> "Nonpayment of rent notices are *** quite similar to 30-day-for-cause termination notices under existing ORS 90.400(1) (and now section 7 of this bill), in that the basis of the termination is a violation by the tenant (failure to pay the rent) which the tenant can cure (by paying the rent) within a certain time after delivery of the notice. Just as we now require 30-day-for-cause notices to describe a cure, we here require nonpayment of rent notices to describe the cure—payment of a specific amount of money. Some trial courts have already begun to read ORS 90.400(2) to impose this requirement. We now make it explicit."

Testimony, Senate Committee on Rules, HB 2524A, June 1, 2005, Ex H at 8 (statement of John VanLandingham) ("VanLandingham Testimony"); *see also id.* at 4 (explaining that HB 2524A would break up then-existing ORS 90.400 into separate sections).

Under the ORLTA, if a landlord gives notice of termination for nonpayment of rent, and the tenant does not timely cure the default, the landlord may file an FED action to evict the tenant and retake possession of the premises. *See* ORS 90.394 (permitting the landlord to "terminate the rental agreement for nonpayment of rent and take possession as provided in ORS 105.105 to 105.168"); ORS 105.115(2)(b) (providing that the landlord may file an FED action to evict the tenant "after the expiration of the time period provided in a notice terminating the tenancy"); *C.O. Homes, LLC v. Cleveland*, 366 Or 207, 211, 460 P3d 494 (2020) ("The FED statutes provide the process by which a landlord may recover possession of a residential dwelling unit after the landlord has terminated a rental agreement."). For FED purposes, it is a cause of "unlawful holding by force" when a tenant "fails

or refuses to pay rent within the time period required by a notice under ORS 90.394." ORS 105.115(2)(a)(A).[2]

Once an FED action is filed, ORS chapter 90 applies to determine the rights of the parties, "including: (a) [w]hether and in what amount rent is due; (b) [w]hether a tenancy or rental agreement has been validly terminated; and (c) [w]hether the tenant is entitled to remedies for retaliatory conduct by the landlord as provided by ORS 90.385 and 90.765." ORS 105.115(3). The tenant may bring counterclaims against the landlord. ORS 90.370. The prevailing party may be awarded attorney fees. ORS 90.255.

In that larger statutory context, we consider what the legislature meant when it added the requirement that a notice of termination for nonpayment of rent "also specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent." ORS 90.394(3). Specifically, we consider whether that provision requires the landlord to state the amount of rent that the landlord *claims* is owed or, conversely, whether it requires the landlord to state the amount of rent that is *actually* owed (as found by a neutral factfinder if necessary). The trial court applied the former construction, whereas defendants argue for the latter construction. Plaintiff has not appeared on appeal, but that does not affect our obligation to construe the statute correctly. *See Yarbrough v. Viewcrest Investments, LLC*, 299 Or App 143, 152 n 5, 449 P3d 902 (2019), *rev den*, 366 Or 135 (2020) ("[I]n construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

In support of their position, defendants analogize to *Greenway v. Parlanti*, 245 Or App 144, 261 P3d 69 (2011), in which we construed ORS 90.396. If a tenant commits certain acts or omissions, ORS 90.396(1) allows the landlord

---

[2] It is also unlawful holding by force "[w]hen a rental agreement by its terms has expired and has not been renewed, or when the tenant or person in possession remains in possession after a valid notice terminating the tenancy pursuant to ORS chapter 90, or is holding contrary to any valid condition or covenant of the rental agreement or ORS chapter 90." ORS 105.115(2)(a)(B). Whereas ORS 105.115(2)(a)(A) applies specifically to termination for nonpayment of rent under ORS 90.394, ORS 105.115(2)(a)(B) applies more broadly to the many other reasons that a rental agreement may terminate.

to terminate the rental agreement and file an FED action, but it requires "at least 24 hours written notice specifying the acts and omissions constituting the cause and specifying the date and time of the termination." In *Greenway*, we held that a notice that stated that the defendant's tenancy would terminate "twenty four (24) hours from the time of service" did not comply with ORS 90.396. 245 Or App at 148. For two reasons, we agreed with the defendant that a notice under ORS 90.396 must state a "specific date and time" for termination. *Id.* First, looking to the dictionary definition of "specifying"—which is "'to mention or name in a specific or explicit manner: tell or state precisely or in detail'"—we concluded that the legislature intended the landlord to specify an actual date and time, such as "12:00 p.m. on October 6, 2009." *Id.* at 148-49 (quoting *Webster's Third New Int'l Dictionary* 2187 (unabridged ed 2002)). Second, because the ORLTA permits service in various ways, service-dependent language like that in the plaintiff's notice would leave tenants to guess when a tenancy would terminate. *Id.* at 149.

Here, unlike the situation in *Greenway*, there is no question that plaintiff's termination notice specified an actual *amount* of rent. *See* ORS 90.394(3) (requiring notice to "specify the amount of rent that must be paid"). The notice did not say, for example, that the tenancy would terminate unless defendants paid "the amount due" or paid "the rent that had not been paid." The issue here is therefore different from that in *Greenway*. The question is not whether the notice "specified" an amount of rent, but rather what "amount of rent" means in this context. Is it the amount that the landlord claims is owed? Or is it the amount that is actually owed, as a matter of fact, even if determining that fact requires judicial factfinding?

Consistent with the trial court's ruling, we conclude that the "amount of rent" that must be specified in a termination notice under ORS 90.394(3) is the specific dollar amount that the landlord claims must be paid to cure the default, not the amount actually due as found by a factfinder. Several considerations lead us to that conclusion.

First, ORS 90.394 contemplates the landlord drafting the notice. As such, the more natural reading of the

statutory text in context is that the notice must specify the dollar amount that the landlord claims must be paid, by the designated date and time, to cure the default and avoid termination. To the extent that there may be disagreement about the amount due (known or unknown to the landlord), the landlord can only be expected to state the amount that the landlord believes is due. The landlord has no greater authority than the tenant to determine what is *actually* due—that is a question for the court in the end. As long as the notice states the specific "amount of rent" claimed to be due and the specific "date and time" set for termination, the notice complies with ORS 90.394(3), even if the tenant may later contest that rent is owed, contest how much rent is owed, or otherwise challenge the validity of the purported termination. If the landlord files an FED action and fails to prove that the tenant *actually* owes rent, the tenant will prevail on the merits, but it does not follow that the notice was invalid.

Second, ORS 105.115 specifically provides for an FED court to determine "[w]hether and in what amount rent is due." ORS 105.115(3). Thus, when ORS 90.394(3) was added to the ORLTA in 2005, the legislature would have understood that, if a tenant disagreed with the dollar amount stated in the termination notice, the FED court would be able to resolve that dispute and would evict the tenant only if the tenant was *actually* in arrears on rent and had failed to cure the *actual* deficiency upon receiving notice of termination for nonpayment of rent.

Third, both the legislative history of ORS 90.394(3) and our construction of the related statute ORS 90.396 in *Greenway* support our understanding that the purpose of ORS 90.394(3) is to ensure that a termination notice is unambiguous about the landlord's intentions—to terminate the rental agreement for nonpayment of rent if X amount is not paid by Y date—not to conclusively establish the parties' rights. Requiring the notice to specify the exact termination date and time eliminates guesswork about when the landlord intends that termination will occur, *see Greenway*, 245 Or App at 149, but the tenant may still challenge the validity of the termination and, if successful, avoid eviction, *see* ORS 105.115(3)(b) (allowing an FED court to determine "[w]hether a tenancy or rental agreement has been validly

terminated"). Similarly, requiring the notice to specify the exact amount that must be paid to avoid termination eliminates guesswork about the amount being demanded, *see* VanLandingham Testimony at 8, but the tenant may still dispute any portion of that amount, including contesting the validity of a termination based on failure to pay the disputed portion, *see* ORS 105.115(3)(a)-(b).

Indeed, the landlord-tenant coalition representative who testified about the 2005 amendments to the ORLTA commented to very similar effect. One amendment imposed a requirement that a 30-day for-cause termination notice describe "at least one possible remedy to cure the violation and designate the date by which the tenant must cure the violation," if the violation was curable. Or Laws 2005, ch 391, § 7; *see* ORS 90.392(3)(c) (codifying same). Regarding that amendment, the representative said:

> "The 30 day termination notice must now describe at least one possible cure—not the only cure, mind you; *the judge will ultimately decide what is a cure*—and specify the cure date, for example: 'To avoid this termination, you must pay the late charge [a cure] by June 15 [the cure date], or your tenancy will terminate on July 1.'"

VanLandingham Testimony at 6 (emphasis added). When the representative later addressed the amendment now codified as ORS 90.394(3), he described nonpayment-of-rent notices as "quite similar" to 30-day for-cause notices and indicated that both amendments served the same purpose—to require the landlord to describe a cure. *Id.* at 8. The legislative history is consistent with our view of ORS 90.394(3) as requiring a notice that clearly states the landlord's position, rather than one that perfectly predicts a final determination of the parties' rights.[3]

---

[3] Defendants argue in their briefing that the trial court's construction of ORS 90.394(3) requires tenants "to 'guess' how much rent they actually owe." They argue that that is analogous to requiring tenants "to guess as to when the tenancy terminates." *Greenway*, 245 Or App at 149. But the analogy does not hold up. When terminating a rental agreement for nonpayment of rent, the landlord unilaterally sets the date and time of termination, so ORS 90.394(3) is necessarily referring to the date and time chosen by the landlord. By contrast, the amount of rent necessary to cure default is an independent fact, about which people may disagree, but which only a court can conclusively decide. The "amount of rent" in ORS 90.394(3) therefore could have different meanings—what the landlord believes is necessary to cure, what the tenant believes is necessary to cure, or what is actually necessary

Fourth, defendants' proposed construction of ORS 90.394(3) contemplates a scenario in which a landlord gives a tenant notice of termination for nonpayment of rent and files an FED action, the court holds the FED trial and finds the relevant facts, and the tenant then challenges the validity of the *notice* based on the ultimate facts found by the court. At that point, in defendants' view, if the tenant owes a dollar less rent than the landlord claimed, the action must be dismissed, the landlord must serve a new notice and file a new FED action, and a second FED trial must be held. It is difficult to believe that the legislature intended notice validity to be determined by a full FED trial (or intended to require multiple FED trials to resolve one FED claim).

For all of those reasons, we conclude that, to comply with ORS 90.394(3), a notice of termination for nonpayment of rent must specify the dollar amount that the landlord claims is necessary to cure. If the tenant pays a lesser amount and contests the difference, it is for the FED court to determine whether any nonpayment of rent has occurred. The tenant will not be subject to eviction if the tenant cured the actual deficiency (or, possibly, if the tenant deposited the disputed amount with the court[4]). But, upon receiving a notice of termination for nonpayment of rent, a tenant who is in fact behind on rent cannot pay nothing, continue to occupy the premises, litigate the amount owed, and then obtain dismissal of the FED action on the basis that the amount stated in the notice was not exactly the same as the amount ultimately found by the court to be owed. In rejecting that approach, the trial court correctly construed ORS 90.394(3), and it did not err by denying defendants' motion to dismiss.

Affirmed.

---

to cure—but, for the reasons discussed, we conclude that the legislature intended the notice to state the landlord's position. A tenant who wants to avoid eviction may try to "guess" whose version of the facts an FED court will find credible—in deciding whether to pay the entire noticed amount or risk taking the matter to court—but that is very different from the "guessing" in *Greenway*.

[4] *Cf. Napolski v. Champney*, 295 Or 408, 420, 667 P2d 1013 (1983) ("[B]ecause defendant here had asserted a valid counterclaim against plaintiff under the ORLTA and had tendered into court sufficient funds to cover the rent that was ultimately adjudged due plaintiff, under ORS 91.810(1) she was entitled to retain possession of the premises. Moreover, since she prevailed on both her counterclaim and on the issue of possession, she was also entitled to recover costs and disbursements, and attorney fees.").