Argued and submitted May 3; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings July 28, 2022

Xin HICKEY,
*Respondent on Review,*

*v.*

Joshua SCOTT,
Jamie Katherine Scott,
and all other occupants,
*Petitioners on Review.*

(CC 19LT18673) (CA A173328) (SC S068647)

515 P3d 368

In this action for forcible entry and detainer (FED), plaintiff landlord sought to evict defendant tenants from a rental unit for nonpayment of rent. Defendants moved to dismiss the FED action, arguing that plaintiff's termination notice was invalid under ORS 90.394(3) because it stated an amount of rent that was greater than the amount that the trial court determined defendants owed. The trial court denied the motion to dismiss, entered judgment against defendants, and the Court of Appeals affirmed. *Held*: Under ORS 90.394(3), a valid termination notice must "specify the amount of rent that must be paid *** to cure the nonpayment of rent" and that amount must be a precise and accurate amount, not a greater, inaccurate amount. A landlord's failure to comply with the requirements of ORS 90.394(3) results in an invalid notice and the subsequent FED action must be dismissed.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Emily Rena-Dozier, Oregon Law Center, Portland, argued the cause and filed the briefs for petitioners on review. Also on the briefs was Blair Bobier, Legal Aid Services of Oregon, Newport.

Thomas M. Christ, Oregon Appellate Pro Bono Program, Portland, argued the cause and filed the brief for respondent on review.

_____

* On appeal from the Lincoln County Circuit Court, Philip L. Nelson, Senior Judge. 310 Or App 825, 492 P3d 123 (2021).

Jane Moisan, People's Law Project, Portland, filed the brief for *amicus curiae* Community Services Consortium.

Harry Ainsworth, Portland, filed the brief for *amicus curiae* The Commons Law Center.

Before Balmer, Presiding Justice, and Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices, and Nakamoto, Senior Judge, Justice pro tempore.\*\*

NELSON, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

\*\* Walters, C. J., did not participate in the consideration or decision of this case.

**NELSON, J.**

In this forcible entry and detainer (FED) action to recover possession of a residential dwelling unit, we consider whether the trial court erred in denying defendants'—the tenants of the residential dwelling unit—motion to dismiss the action on the ground that plaintiff's—the landlord's—written notice of termination for nonpayment of rent stated an amount of rent due that exceeded the amount that the trial court determined tenants actually owed. The Court of Appeals affirmed the trial court's denial of defendants' motion to dismiss. *Hickey v. Scott*, 310 Or App 825, 492 P3d 123 (2021). Defendants argue that plaintiff's termination notice was invalid because it set out an inaccurate total of the amount of rent due to cure the nonpayment of rent—a total that was in excess of what the trial court determined that the tenants actually owed—in violation of the requirement in ORS 90.394(3) that the notice "specify the amount of rent that must be paid * * * to cure the nonpayment of rent."[1] In defendants' view, the invalid termination notice entitled them to dismissal of the FED action. We agree with defendants and, accordingly, reverse and remand to the trial court for further proceedings.

In October 2019, defendants rented an apartment from plaintiff pursuant to a month-to-month tenancy rental agreement. The parties' agreement required defendants to pay a $1,500 security deposit and $850 a month in rent. When defendants moved in, they personally paid $525 toward their October rent, and, a short time later, the Siletz Tribal Housing Department (STHD) paid plaintiff $1,500 on defendants' behalf. No further payments were made.

On December 17, 2019, plaintiff issued to defendants a written notice for nonpayment of rent and intent to terminate (hereafter, "termination notice" or "notice"). The notice stated that defendants owed $1,700 in unpaid rent—$850 for rent in October, and $850 for rent in November—and that the

---

[1] In connection with the COVID-19 pandemic, ORS 90.394 was temporarily amended to require longer notice periods. *See* Or Laws 2020, ch 3, § 10 (3d Spec Sess). The length of the notice period is immaterial to the issue on appeal, so we cite the current statute, rather than the earlier version under which plaintiff's FED complaint was decided.

rental agreement would be terminated if that amount was not received by December 27, 2019, at 11:59 p.m. Defendants did not pay any amount, and plaintiff filed an FED action on December 30, 2019.

The FED trial was held in January 2020. In their opening statement, defendants argued that they owed no additional rent for October and November—characterizing the $1,500 STHD payment as a rent payment, meaning that, when combined with the $525 payment that defendants had made to the landlord upon moving in, they had already paid more than the $1,700 rent due for those two months. Plaintiff, by contrast, argued as part of her presentation that defendants had personally paid $525 in early October, but that that payment had been understood to cover a $100 cleaning deposit and $425 in rent, and then the $1,500 STHD payment had been intended to cover defendants' security deposit, not monthly rent. At the close of plaintiff's case, defendants moved to dismiss the FED action on the ground that, at most, they owed an amount less than the $1,700 stated in plaintiff's termination notice. Because that notice did not state the true amount due, defendants argued, it was invalid, and the appropriate relief was dismissal of the FED action.

The trial court took the motion under advisement, and defendants put forth their case. After the defense rested, the trial court issued a letter opinion that denied defendants' motion to dismiss. The court began by resolving the parties' factual dispute, explaining that

"[t]he landlord *** failed to give the tenant credit for the amount of rent that was paid when the parties created the tenancy, which I find was $525.00. When the landlord provided the 72 hour notice, the amount of rent which was due was $1,175.00, not $1,700.00 as claimed in the notice."[2]

The trial court then noted that, under ORS 90.394, the landlord must "specify the amount of rent" that the tenant must pay to cure the nonpayment of rent and concluded that, even if the amount of rent actually due is less than the amount

---

[2] The trial court arrived at $1,175.00 by totaling the full unpaid November rent ($850) and the remaining unpaid October rent ($325, the difference between the October rent payment of $850 and the $525 previously paid).

stated in the termination notice, the tenant must tender at least the lesser amount of rent to successfully defend against eviction. Because defendants had not done that, the court entered judgment for the plaintiff.

Defendants appealed, assigning error to the denial of their motion to dismiss. In construing relevant parts of ORS 90.394, the Court of Appeals first determined that a termination notice must specify, as the "amount of rent" required by subsection (3), the specific dollar amount that the landlord *claims* must be paid to cure the nonpayment of rent, as opposed to the ultimate amount that *actually is due* as found by the trial court acting as factfinder. *Hickey*, 310 Or App at 831. The court then explained that a tenant who receives a termination notice that contains an inaccurate statement as to the amount of rent actually due to cure the nonpayment of rent has two options: (1) the tenant may pay a lesser amount than demanded in the notice and contest the difference at the FED trial (and, in that scenario, the tenant would not be subject to eviction if the actual deficiency were cured); or (2) the tenant could "possibly" deposit the disputed amount with the court until the factual dispute as to the actual amount due is resolved. *Id.* at 834. The tenant could not, however, "continue to occupy the premises, litigate the amount owed, and then obtain dismissal of the FED action on the basis that the amount stated in the notice was not exactly the same amount ultimately found by the court to be owed." *Id.* Accordingly, the Court of Appeals concluded that the trial court correctly applied ORS 90.394 and affirmed that court's denial of defendants' motion to dismiss. *Id.*

Defendants sought review before this court. We allowed review to consider whether ORS 90.394(3) requires a termination notice to contain an exact and accurate statement of the amount of rent necessary to cure the nonpayment of rent, and, if so, the intended remedy when the notice is not accurate. For the reasons that follow, we conclude that ORS 90.394(3) requires that a notice of termination for nonpayment of rent must specify the correct amount due to cure the default. We further conclude that, when the notice states an incorrect amount that is greater than the amount actually due, the notice is invalid, and any subsequent FED action relying on that notice is likewise invalid and requires

dismissal. Accordingly, we reverse the contrary decisions of both the trial court and the Court of Appeals.

As noted, the issue presented turns on the meaning of ORS 90.394, which is part of the Oregon Residential Landlord and Tenant Act (ORLTA). By way of background, the ORLTA applies to most residential landlord-tenant relations. *See* ORS 90.115 ("This chapter applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state."). ORS 90.401 provides that a landlord may pursue any one or more of the remedies set forth in the ORLTA, as well as common-law remedies. One of those available remedies, as set forth in ORS 90.394, allows a landlord to terminate a rental agreement for nonpayment of rent. That statute requires written notice of the nonpayment of rent that must satisfy specific requirements. *See* ORS 90.394 (setting out requirements for notice of termination).

Once a landlord provides a tenant a termination notice for nonpayment of rent, the tenant has a limited period of time to cure the default based on ORLTA requirements and the terms set out in the notice. *Id.* If the tenant does not timely cure the default, then the landlord may file an FED action to evict the tenant and take possession of the premises. *See* ORS 90.394 (permitting landlord to "terminate the rental agreement for nonpayment of rent and take possession as provided in ORS 105.105 to 105.168"); ORS 105.115(2)(b) (providing that landlord may file an FED action to evict tenant "after the expiration of the time period provided in a notice terminating the tenancy"). No provision in the ORLTA allows a landlord to utilize self-help methods to evict a tenant. *See generally* ORS 90.375 (setting out the relief that a tenant can obtain following an unlawful ouster, particularly when a landlord utilizes self-help methods to remove a tenant from premises).

The nature and purpose of an FED proceeding is to afford the landlord a quick and speedy method to obtain recovery of property from the tenant. *See Lexton-Ancira, Inc. v. Kay*, 269 Or 1, 5-6, 522 P2d 875 (1974) ("An FED proceeding is a special statutory proceeding of a summary nature

designed to secure the speedy restitution of premises forcibly or unlawfully detained."); *see also* ORS 105.110 ("When a forcible entry is made upon any premises * * * the person entitled to the premises may maintain in the county where the property is situated an action to recover possession of the premises in the circuit court or before any justice of the peace of the county."). The FED statutes permit a landlord to bring an action to recover possession of a dwelling unit when a tenant unlawfully holds possession "by force," ORS 105.110, or when a tenant "remains in possession after a valid notice terminating the tenancy pursuant to ORS chapter 90," or when a tenant fails to pay rent within 72 hours of a valid notice, ORS 105.115(2)(a)(A)-(B). A landlord may not file an action for the return of possession until after the expiration of the time provided in the termination notice. ORS 105.115(2)(b).

That statutory framework is the context in which the dispute in this case arose. ORS 90.394 sets out the requirements for a termination notice based on nonpayment of rent in considerable detail. The notice must state that the landlord intends to terminate the rental agreement unless the rent is paid within the notice period. ORS 90.394(1). The landlord must serve the notice on the tenant, and must do so within a specific timeframe. *See* ORS 90.394(2) (detailing the time requirements for serving a notice of termination). Finally, the notice "must also specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent." ORS 90.394(3). That latter provision is at issue here.

This case presents a question of statutory interpretation, specifically interpreting the meaning of the phrase "specify the amount of rent that must be paid" in ORS 90.394(3). As noted, defendants argue that the Court of Appeals' decision—which held that a landlord need not specify in the termination notice the *actual* amount of rent that is due under the rental agreement, but merely *an* amount that the landlord *claims* to be due—is based on a misreading of the text of ORS 90.394(3) and does not take into account the ORLTA's overall statutory scheme. They contend that the legislature's use of the word "specify" requires factual

accuracy. From that point, they further contend that where, as here, a termination notice asserts a distinct breach of the rental agreement—nonpayment of $1,700 of rent—and the trial court finds that the tenant did not, in fact, commit that breach, but did commit another—nonpayment of only $1,175 of rent—the notice of termination is invalid, and, as a consequence, the landlord is not entitled to possession. Instead, defendants theorize, the trial court must dismiss the FED action based on the invalidity of the notice and require the landlord to begin the process anew by issuing a new notice that accurately states the actual amount of rent that the tenant must pay to cure the nonpayment. From defendants' perspective, strictly holding landlords to that statutory standard is necessary to fairly balance a tenant's interest in retaining the home with a landlord's power to rapidly evict a tenant for nonpayment of rent.

Plaintiff disagrees, arguing that ORS 90.394(3) does not require a termination notice to correctly state the amount of rent actually owed; instead, it requires a statement of only whatever amount that the landlord demands that the tenant pay to cure a nonpayment and avoid eviction. Plaintiff adds that, even if this court were to conclude otherwise—that is, that the amount stated in the notice must be the precise amount necessary to cure the nonpayment—a landlord's failure to have accurately predicted that amount should not result in dismissal of the subsequent FED action if, in fact, some amount is found due. Further, plaintiff argues that the Court of Appeals correctly pointed out that a tenant can pay a lesser amount than the amount demanded in the notice and contest the difference. In such a case, plaintiff contends that the tenant will not be subject to eviction if the tenant cures the actual deficiency. In conclusion, plaintiff urges us to affirm the decision of the Court of Appeals, either on the basis that the amount that must be specified in a termination notice is the specific dollar amount that the landlord *claims* must be paid to cure the nonpayment—as opposed to the amount actually due as found by the trial court acting as factfinder—or on the basis that, notwithstanding any inaccuracy in the termination notice, dismissal was not the proper remedy.

As in any case involving the interpretation of a statute, we resolve the issue before us following the established statutory interpretation framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), *as modified by State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our primary goal in interpreting statutory provisions is to determine the intent of the legislature at the time it enacted the relevant statute. *See Gaines*, 346 Or at 171 ("This court remains responsible for fashioning rules of statutory interpretation that, in the court's judgment, best serve the paramount goal of discerning the legislature's intent."). In seeking to determine the legislature's intent, we examine the text, context, and legislative history surrounding the enactment of the statute at issue. *Id.* at 172.

Before ORS 90.394 was enacted in 2005, the then-operative statute governing termination for nonpayment of rent required only that a termination notice state "the landlord's intention to terminate the rental agreement if the rent is not paid within" the specified date and time to cure the nonpayment. *Former* ORS 90.400(2)(b) (2003). There was no requirement that the landlord state how much rent was owed; instead, the notice was required to state only that the tenant had breached the rental agreement by nonpayment and the landlord intended to terminate the rental agreement as a result, and then also set out the amount of time that the tenant had to cure the breach by paying the amount that was owed to avoid eviction. But, when the legislature, in 2005, amended the ORLTA as part of a set of changes proposed by a coalition of Oregon landlords and tenants, it added the requirements now codified in ORS 90.394. *See generally* Testimony, House Committee on Judiciary, Subcommittee on Civil Law, HB 2524 (statement of John VanLandingham) (describing the history of the ORLTA and the purpose of the proposed amendments). Now, under ORS 90.394(3), a termination notice for nonpayment of rent "must also specify the amount of rent that must be paid * * * to cure the nonpayment of rent."

The addition of the requirement that landlords "specify the amount of rent that must be paid * * * to cure

the nonpayment of rent," ORS 90.394(3), suggests that the legislature understood that landlords are typically in the best position to provide tenants with information about the reason for termination and how it might be cured so as to avoid eviction. As noted, those requirements were not part of the statutory process before the 2005 amendments. It follows, in our view, that, in imposing that specific requirement, the legislature intended that the landlords accurately convey that information to tenants; not that landlords merely notify tenants of some amount, even if greater than the amount actually due.

That initial impression is bolstered by an examination of the text of ORS 90.394(3). When read together, the plain meaning of the terms used in ORS 90.394(3)—specifically, the use of the word "specify" and the phrase "the amount of rent that must be paid" to cure the nonpayment—suggest that the legislature intended that a termination notice state the correct amount of money that a tenant must pay to cure the nonpayment of rent and avoid eviction.

We begin with the word "specify" because it appears first in the statute. Webster's Dictionary defines "specify" as "to mention or name in a specific or explicit manner: tell or state precisely or in detail." *Webster's Third New Int'l Dictionary* 2187 (unabridged ed 2002). When that meaning is imported into the text of ORS 90.394(3), we understand the legislature to have intended a requirement that a termination notice state precisely "the amount of rent that must be paid *** to cure the nonpayment of rent"; that is, the statute requires that the notice include a precise statement of the rent that is due to cure the nonpayment and avoid eviction. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) ("[I]f the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended.").

What the word "specify" does not clarify, however, is whether that precise statement of the amount of rent due to cure the nonpayment must also be an accurate, or correct, statement. The use of the phrase "the amount of rent that must be paid," however, provides an answer to that question.

As we have previously explained, the use of the definite article "the" often signifies a narrowing intent, a reference to "something specific, either known to the reader or listener or uniquely specified." *State v. Lykins*, 357 Or 145, 159, 348 P3d 231 (2015). Because the article "the" is used in ORS 90.394(3) to refer to "*the* amount of rent that *must* be paid" to "cure" (emphasis added), rather than *an* amount that the landlord claims to be due, that wording choice suggests an intention that the amount would have an objective, verifiable quantity, rather than simply be any amount identified by the landlord. *See State v. Lopez-Minjarez*, 350 Or 576, 583, 260 P3d 439 (2011) (reasoning that the legislature's use of a definite article showed intent to refer to the particular and known).

More precisely parsed, that wording requires the landlord to include "the amount of rent that must be paid \*\*\* to cure the nonpayment," ORS 90.394(3), or the nonpayment will not be cured and eviction may follow. Logically, only the actual amount required to cure the nonpayment of rent—not any greater amount claimed to be due by the landlord—is the amount that would stop an eviction. In sum, the statutory text of ORS 90.394(3) suggests that the legislature intended the requirement that the landlord "specify the amount that must be paid" to be a precise and accurate statement of the amount of rent necessary to cure the nonpayment of rent.

The context of the FED statutes related to ORS 90.394(3), as well as our own case law, support that interpretation. In prior cases, this court has examined the ORLTA together with the substantive FED statutes contained in ORS chapter 105, explaining that the two chapters are intended to be read together when seeking to determine the legislature's intent:

> "We conclude that the forcible entry and detainer statutes and the Residential Landlord and Tenant Act are not unrelated statutes. In enacting Oregon Laws 1973, ch. 559, ss 34-36 (part of the Residential Landlord and Tenant Act), extensive amendments were made to the forcible entry and detainer statutes. The clear intent of the legislature is obvious and the court is obligated to give effect to the unambiguous legislative mandate."

*Executive Management Corp. v. Juckett*, 274 Or 515, 518, 547 P2d 603 (1976). Although the provisions in the ORLTA define the contours of the landlord-tenant relationship, understanding the statutory processes required to initiate and prevail in an FED action provides additional insight into the legislature's intent in creating the termination notice requirements.

ORS chapter 105 authorizes an FED cause of action for unlawful holding by force based on a tenant's nonpayment of rent. ORS 105.115(1) (so providing); *see also* ORS 105.115(2) (setting out causes of such actions involving dwelling units). Then, when such an action is initiated based on nonpayment of rent, ORS 105.115(3) provides:

> "In an action under subsection (2) of this section, ORS chapter 90 shall be applied to determine the rights of the parties, including:
>
> "(a)   Whether *and in what amount* rent is due;
>
> "(b)   *Whether a tenancy or a rental agreement has been validly terminated*; and
>
> "(c)   Whether the tenant is entitled to remedies for retaliatory conduct by the landlord as provided by [statutes that are not applicable here]."

(Emphases added.) ORS 105.115(3) thus authorizes the trial court to evaluate the facts and determine not only the amount of rent that is due, but also whether the landlord's termination of the rental agreement was valid.

As did the Court of Appeals, plaintiff relies on ORS 105.115(3) to support the contention that a termination notice need state only the specific dollar amount that the landlord claims must be paid to cure the default, not the amount actually due. We read the statute differently than the Court of Appeals and disagree with plaintiff's interpretation. In our view, ORS 105.115(3) indicates the legislature's intent that part of the trial court's role in determining whether a landlord has properly stated a claim for possession includes a determination of whether the landlord's termination notice has demanded an amount of rent that is, in fact, "due." If the factual accuracy of a demand for rent is not relevant to the ultimate determination of whether the landlord is entitled

to possession, then there would be little reason for the trial court's designated role in determining whether the tenant actually owes the amount of rent that is alleged to be due; all that would matter would be whether *some* amount of rent was due. Thus, to give full effect to the trial court's role as described in ORS 105.115(3)(b), together with the termination notice requirements set out in ORS 90.394(3), the landlord's statement in the notice of termination must be both precise and accurate for the notice to be valid. That is to say, the amount of rent that "must be paid *** to cure the nonpayment of rent," which ORS 90.394(3) requires be included in the notice, must not be more than the "amount [of] rent [that] is due," which ORS 105.115 authorizes the court, as factfinder, to determine. Stated another way, a finding that the amount stated in the termination notice is greater than the amount due to cure the nonpayment amounts to a finding that the notice was not valid.

In addition to the text of ORS 90.394(3) and its surrounding statutory context, this court's prior case law supports the conclusion that a valid termination notice must include a precise and accurate statement of the rent that must be paid to cure the nonpayment of rent. In *C.O. Homes, LLC v. Cleveland*, 366 Or 207, 209, 460 P3d 494 (2020), we considered the notice requirements of the ORLTA and whether the trial court had erred in allowing the landlord to amend its complaint to include an additional basis for termination—a 30-day notice of termination for cause, rather than the 72-hour termination for nonpayment of rent that had been attached to the complaint. To determine whether the amendment to the landlord's complaint substantially changed the claim for relief and therefore prejudiced the tenant, we began by evaluating the role of the ORLTA and the FED statutes in a landlord's recovery of possession, including by considering many of the same statutory principles that we emphasize here. *See id.* at 211 (explaining that "[t]he FED statutes provide the process by which a landlord may recover possession of a residential dwelling unit after the landlord has terminated a rental agreement"). Then, we explained that amending the complaint to include the for-cause termination notice had substantially changed the landlord's claim for relief in a manner that prejudiced the

tenant. We emphasized that it was not because the tenant's alleged violation had changed—both termination notices alleged that defendant had failed to make agreed upon monthly security deposit payments—but, rather, because the basis upon which the tenant could challenge the termination notice itself would change. *Id.* at 219.

To be sure, the question in this case is different than the question presented in *C.O. Homes, LLC*. Here, there is no argument that plaintiff has asserted a new basis for termination that would potentially impact defendant's ability to respond to plaintiff's claims. Nonetheless, the principles discussed in that case still inform our decision here. Specifically, as in that case, we again emphasize the prerequisites to a landlord's claim for possession: A landlord's "claim to possession depend[s] not only on whether the tenant had violated the rental agreement, but also on whether the landlord had properly terminated that agreement by providing tenant with a valid notice of termination." *Id.* at 221. To effectively assert a claim for possession, then, the landlord "must demonstrate that it delivered a particular, valid notice that effectively terminated the rental agreement." *Id.* at 218. As we see it, there are two requirements that a landlord must establish to succeed on a claim for possession: (1) the landlord must have delivered a valid termination notice that complied with the statutory requirements; and (2) the tenant then must have remained in possession of the premises after the expiration date specified in the notice. *See id.* at 219 ("[T]he operative facts in an FED action for possession of a dwelling unit governed by the ORLTA are, at a minimum, that the landlord gave the tenant a valid notice in accordance with a particular statutory provision of the ORLTA and that the tenant remained in possession of the unit after the time period specified in the notice expired."). As stated in *C.O. Homes, LLC*, "A tenant's violation of a rental agreement may give a landlord the right to give a notice of termination, but *it is the particular notice*, and *not the violation*, that entitles a landlord to assert a claim for possession." *Id.* (emphasis added).

We also have previously addressed the importance of strict adherence to the statutory requirements for a notice of termination. In *Ostlund v. Hendricks*, 289 Or 543, 549,

615 P2d 327 (1980), this court considered a statute that provided that a landlord could terminate a tenancy for a mobile home space by "giving to the tenant not less than 30 days' notice in writing prior to the date designated in the notice for termination." *Id*. (emphasis deleted; quoting *former* ORS 91.885(1)). In that case, the landlord had sent the tenant a letter stating that the tenant had 30 days from the receipt of the letter to cure the alleged violations, or legal proceedings would be commenced. *Ostlund*, 289 Or at 549. The tenant challenged the validity of the letter based on the lack of a specific designated date for termination of the tenancy. We agreed that the letter had not provided valid notice, explaining that a termination notice should be clear as to the expectations for the tenant:

> "The tenant should not have to guess whether she is receiving an actual notice of termination, or a letter threatening a future termination notice. We need not set forth an exact formula which will convey a designated date; we only find its absence as a matter of law in the letter in this case."

*Id*. at 549. Without a valid termination notice, the landlord did not have a valid claim for possession, and the FED action was subject to dismissal. *Id*. at 549-50.

Applying our understanding of the text of ORS 90.394(3), the limited legislative history surrounding that statute, and our prior cases, we turn to the facts of this case to evaluate whether plaintiff established a right to possession of the dwelling unit. As explained at the outset, the FED statutes permit a landlord to bring an action to recover possession of premises when a tenant when the tenant "fails or refuses to pay rent within the time period required by a notice under ORS 90.394." ORS 105.115(2)(a)(A). And, as we emphasized in *C.O. Homes, LLC* and *Ostlund*, the notice statutes—including ORS 90.394—require precise and accurate information so that the tenant does not have to guess as to the exact nature of the breach and can be prepared to defend against it. ORS 90.394(3) ensures that a tenant will have that information by clearly requiring a landlord to "specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent." A notice that fails to meet those

requirements—that is, fails to provide the precise and accurate information required—fails to give tenants that notice and, as a result, renders the notice invalid.

That conclusion as to the notice of termination dictates our conclusion regarding the remedy for a landlord's failure to accurately state the amount of rent that must be paid to cure the nonpayment of rent. As we clarified in *Ostlund*, an FED action based on an invalid termination notice is subject to dismissal, *i.e.*, the claim itself is invalid. *See Ostlund*, 289 Or at 549-50 (requiring dismissal of FED where there was no proof of valid termination notice). Accordingly, we reject plaintiff's contention that dismissal was not warranted here despite the factual inaccuracy of the notice of termination, and we conclude that the trial court erred in denying defendants' motion to dismiss on that ground.

We acknowledge that the strict construction of ORS 90.394(3) to require specification of the precise and accurate amount of rent due—or face the possibility of dismissal of the FED action—may appear to lead to a harsh result in a case such as this, where no evidence suggests that plaintiff acted in bad faith when she overstated the amount of rent still owed by defendants in the termination notice. We note, however, that nothing in either ORS chapter 90 nor ORS chapter 105 precludes a landlord who issues an invalid notice resulting in dismissal from issuing a new, accurate notice based on the amount of rent that the court has determined to be owed and then proceeding to a file a new FED action if the nonpayment is not cured. That is the process that the legislature has contemplated, as demonstrated by the notice requirements in ORS 90.394(3) and the FED proceedings set out in ORS chapter 105. We note that the strictness of the notice requirements are counterbalanced by the rapid timeline that allows a landlord to issue a notice of eviction for nonpayment of rent within 72 hours of the nonpayment and by the fact that a landlord who does not comply with the requirements may issue a corrected notice and refile for eviction almost immediately.

As an additional matter, we do not agree with plaintiff and the Court of Appeals that a tenant could avoid eviction by paying an amount less than the amount demanded in

the termination notice—an amount equal to the amount of rent actually due—and contesting the difference before the FED court. Although that appears to be a viable solution, neither ORS chapter 90 nor chapter 105 provide for that outcome. In actuality, the ORLTA entitles a landlord to reject a payment for less than the amount owed. *See* ORS 90.417(1) (stating that "[a] landlord may refuse to accept a rent tender that is for less than the full amount of rent owed or that is untimely"). If a landlord rejects a tenant's payment that the landlord believes to be less than the amount due—*i.e.*, less than the amount demanded in the termination notice—the tenant is still subject to an eviction proceeding, and nothing in the FED statutes provide for the possibility that the tenant could prevail based on an offer of a lower amount of rent. As a practical matter, that outcome is not available under the terms of the ORLTA or the FED statutes, a final indication that the legislature intended that a court dismiss an FED action upon determining that a notice was invalid.

The foregoing result recognizes a principle that this court has long acknowledged: the balance of power in residential landlord-tenant relationships:

> "[T]he positions of the parties to a residential tenancy are only superficially symmetrical. From the landlord's standpoint[,] a rental is ordinarily a business transaction. Allowing for differences among tenants that may make one preferable to another, their rental payments are fungible. From the tenant's viewpoint, the transaction involves his or her home and personal life. Once the dwelling is occupied, its location, its decor, the view from its windows, the knowledge of one's neighbors, are by no means fungible."

*Brewer v. Erwin*, 287 Or 435, 444, 600 P2d 398 (1979). Ultimately, the landlord is typically in the best position to know the status of the rent that is due, the actual amount of that rent, and what must be paid to cure any default and avoid eviction. Even where the parties dispute that amount, the FED process requires that dispute to be resolved quickly by a factfinder. Requiring a landlord to "specify" accurately the amount of rent that must be paid to cure the nonpayment in the termination notice, or face possible dismissal of an FED action with the option to refile after issuance of a valid termination notice, is a slight burden and one that the

legislature chose to balance the interest of the parties in a case such as this.

Before concluding, we pause here to briefly consider a hypothetical addressed by both parties to this case, which in turn helps to clarify our conclusion. Above, we explained that, to be valid, ORS 90.394(3) requires a termination notice to accurately specify the amount of rent that must be paid "to cure the nonpayment of rent." We reached that conclusion in the context of the scenario presented here— involving a termination notice that stated an amount of rent due that was *more than* the amount actually owed. However, those facts do not implicate a different scenario: when a notice states an amount that is *less than* the amount of rent that is owed. Based on our reading of ORS 90.394(3), the operation of the ORLTA, and the processes laid out in the FED statutes, nothing precludes a landlord from issuing a valid termination notice that states an amount of rent necessary to cure that is *less* than the amount of rent that is presently due. Indeed, the wording of ORS 90.394(3) appears to contemplate that scenario by requiring that the landlord state the amount of rent "to *cure* the nonpayment of rent," not the amount of rent *owed*. (Emphasis added.) There certainly could be a variety of circumstances in which a landlord would be willing to accept some amount less than the contractual amount actually due as sufficient to "cure" the nonpayment and continue the landlord-tenant relationship. In such a scenario, as we understand it, if the landlord demands an amount to cure that is less than the amount owed, and the tenant timely renders the requested cure amount, then the landlord could not proceed in an FED proceeding for possession based on that notice.[3]

In sum, ORS 90.394(3) requires that a valid termination notice "specify the amount of rent that must be paid \*\*\* to cure the nonpayment of rent." We hold that requirement to mean that the notice provide a precise and accurate statement as to the amount of rent that must be paid to cure

---

[3] Because this case does not present that hypothetical scenario, we do not address other questions that could arise under such a scenario, including whether the landlord would be estopped from any other efforts to collect previously owed rent or the effect of the landlord's acceptance of the "cure" on the terms of the rental agreement moving forward.

the nonpayment, not a greater inaccurate amount. When the termination notice is inaccurate as to that amount, the notice is invalid and the associated FED action based on that notice must be dismissed.

Returning to the facts of this case, plaintiff did not issue a valid notice of nonpayment to defendants. The notice stated that defendants owed $1,700 in unpaid rent—$850 for rent in October, and $850 for rent in November—and that the rental agreement would be terminated if that amount was not received by December 27, 2019, at 11:59 p.m. The trial court determined that defendants only owed $1,175.00. Because the notice did not comply with the requirements of ORS 90.394(3), it was invalid, and the trial court therefore should have granted defendants' motion to dismiss the FED action for lack of a valid notice. Plaintiff, then, would have the opportunity to file another FED action after issuing proper notice.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.