676 May 15, 2025 No. 21

IN THE SUPREME COURT OF THE
STATE OF OREGON

KKMH PROPERTIES, LLC,
*Respondent on Review,*

*v.*

Michael P. SHIRE
and all other occupants,
*Petitioner on Review.*

(CC 21LT01841) (CA A176826) (SC S070343)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 1, 2024, at Willamette University College of Law, Salem, Oregon.

Harry Ainsworth, Portland, argued the cause and filed the briefs for petitioner on review.

Brian D. Cox, Law Offices of Brian D. Cox, Eugene, argued the cause and filed the brief for respondent on review.

Amanda Caffall, Portland, filed the brief for *amicus curiae* The Commons Law Center.

Emily Rena-Dozier, Portland, filed the brief for *amici curiae* Legal Aid Services of Oregon, Oregon Law Center, and Oregon Trial Lawyers Association. Also on the brief were Nicole Pritchard, Kayla Spencer, Charlie Allen, Samara Diab, Amy Van Horn, and Nadia Dahab.

DUNCAN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Lane County Circuit Court, Jay A. McAlpin, Judge. 326 Or App 1, 530 P3d 531 (2023).

**DUNCAN, J.,**

The issue in this residential eviction case is whether the landlord complied with ORS 90.392(3), which requires a landlord to provide a tenant with certain information before terminating a rental agreement based on a violation of that agreement. The parties dispute whether, under ORS 90.392(3)(c), the landlord was required to inform the tenant that the violation could be cured. KKMH (landlord) argues that it was not required to do so. In its view, ORS 90.392(3)(c) does not require a landlord to inform a tenant that a violation can be cured if the landlord believes that, as a practical matter, the tenant would not be able to cure the violation within the time that the landlord would allow for a cure. Shire (tenant) disagrees. He argues that, under ORS 90.392(3)(c), if a tenant has a right to cure a violation, the landlord must inform the tenant of that right, regardless of whether the landlord believes that the tenant will be able to exercise that right.

As we describe in greater detail below, landlord sought to terminate its rental agreement with tenant pursuant to ORS 90.392, which authorizes termination of a rental agreement based on, among other things, a "[m]aterial violation by the tenant of the rental agreement." Under ORS 90.392, a rental agreement remains in effect for at least 30 days, unless the violation is substantially the same as one that was the basis of a termination notice within the previous six months, in which case, the rental agreement remains in effect for at least 10 days. ORS 90.392(3)(b), (5).[1]

In this case, landlord issued tenant a "30-Day 'For Cause'" notice terminating the parties' rental agreement based on a violation of that agreement. The notice stated that "no cure opportunity" was available to tenant. After tenant failed to vacate the premises, landlord brought this eviction action against tenant. In response, tenant asserted, as a

---

[1] ORS 90.392 is set out in full below. 373 Or at 689-91. As explained below, ORS 90.392 authorizes one type of rental-agreement termination. 373 Or at 687-92. Other statutes authorize different types, including a 24-hour termination, which can be based on, among other things, conduct that is "outrageous in the extreme," some of which a tenant has no right to cure. 373 Or at 687-88. This case concerns the notice requirements only for 30-day terminations under ORS 90.392.

defense, that the notice did not comply with ORS 90.392(3)(c) and, therefore, could not be a basis for eviction. *See C.O. Homes, LLC v. Cleveland*, 366 Or 207, 219, 460 P3d 494 (2020) ("A tenant's violation of a rental agreement may give a landlord the right to give notice of termination, but it is the particular notice, and not the violation, that entitles a landlord to assert a claim for possession."); *Hickey v. Scott*, 370 Or 97, 110, 515 P3d 368 (2022) (in an eviction proceeding, a landlord must demonstrate that it delivered a "valid notice that effectively terminated the rental agreement" (internal quotation marks omitted)). Specifically, tenant asserted that the notice did not comply with the requirement, established by ORS 90.392(3)(c), that a notice "state that the violation can be cured, describe at least one possible remedy to cure the violation and designate the date by which the tenant must cure the violation."

In response, landlord argued that ORS 90.392(3)(c)'s requirement to state that a violation can be cured applies only "[i]f the tenant can cure the violation as provided in subsection (4) of this section," and subsection (4) refers to violations that "can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise." Landlord further argued that a landlord can determine whether a violation is the type referred to in subsection (4) and can do so based on a tenant's particular circumstances and the time period that the landlord would set for a cure. Therefore, landlord contended, its termination notice was not required to state that tenant could cure the violation because, in landlord's view, tenant would not have been able to cure the violation within the minimum period that the landlord was required to allow for a cure.

The trial court ruled that the notice complied with ORS 90.392(3)(c) and entered a judgment awarding possession of the premises to landlord. Tenant appealed, and the Court of Appeals affirmed. *KKMH Properties, LLC v. Shire*, 326 Or App 1, 10, 530 P3d 531 (2023). Tenant then petitioned this court for review, which we allowed to address the statutory construction question that this case presents: Under ORS 90.392(3)(c), when is a landlord's notice of termination required to state that a violation can be cured?

As we explain below, based on the text, context, and legislative history of ORS 90.392, we hold that a termination notice under ORS 90.392(3)(c) must state that a violation can be cured when, as a matter of law, a tenant has a right to cure the violation. We further hold that a tenant has a right to cure all violations that can be a basis for termination under ORS 90.392, except repeat violations described in ORS 90.392(5), which, by the terms of that subsection, "[t]he tenant does not have a right to cure." Because, in this case, the violation that landlord alleged was one that a tenant has a right to cure, landlord's notice did not comply with ORS 90.392(3)(c), because it failed to state that the violation could be cured. Therefore, we reverse the trial court's judgment and the Court of Appeals' decision.

## I.   FACTS

### A.   *The Termination Notice*

Landlord delivered a "30-Day 'For Cause'" written notice to tenant stating that the parties' residential rental agreement would terminate on a specified date and requiring tenant to vacate the rental premises by that date. The notice stated that the cause for termination was tenant's material violation of the rental agreement in causing "extensive" property damage by "keeping and maintaining 277+ guinea pigs running 'free range'" on the premises. The notice did not state that the violation could be cured. To the contrary, it stated that, because the damage to the premises would cost "tens of thousands of dollars" to repair and could not be repaired while tenant remained on the premises, "no cure opportunity *** is available to you." Tenant did not vacate the premises by the specified date, and landlord initiated this "forcible-entry-and-detainer" (FED) action to gain possession of the premises. *See* ORS 105.105 - 105.168 (governing such actions).

### B.   *The FED Proceeding*

At the FED trial, landlord presented evidence that tenant's guinea pigs had caused damage to the carpeting, flooring, walls, ventilation system, and other portions of the premises and that, to repair the damage, the premises would have to be "stripped to its bones"—*i.e.*, its "bare structure, framing." There was evidence that the repairs would

cost between $20,000 and $100,000, and that those repairs could not be completed with someone living on the premises. Tenant testified that he did not have the money to pay for the repairs but believed he would be able to collect the necessary amount of money from members of his church.

At the close of landlord's case, tenant moved to dismiss the action on the ground that landlord's termination notice was invalid because it did not provide tenant with notice of the right to cure the violation as required by ORS 90.392(3)(c). *See C.O. Homes, LLC*, 366 Or at 219 (stating that a landlord must demonstrate that it delivered a valid termination notice). Tenant argued that ORS 90.392(3)(c) requires notice of the opportunity to cure whenever it is "theoretically" possible to cure the violation described in the notice by one of the means listed in ORS 90.392(4), that is, "by a change in conduct, repairs, payment of money or otherwise." Tenant urged that the notice requirement incorporates an "objective standard" that considers whether the "violation as a matter of law [is] a curable violation." In other words, tenant argued that, under ORS 90.392(3)(c), whether a violation is the type that can be cured is "a question of law." Specifically, tenant argued:

> "I think * * * that's what the legislature wanted to happen, is giving people an opportunity to cure these things, and * * * again, I think it's a matter of law. It's a question of law whether it's the type of violation that can be cured, and I think a landlord agrees that somewhere between twenty and thirty thousand dollars would cure this, from a landlord's point of view. And thus the landlord probably should put that in their notice, and given him an opportunity to cure it. It wasn't for the landlord to second guess the tenant's ability * * * to make the payment."

Applying that standard, tenant argued that landlord's notice should have provided notice of the right to cure because it described a violation—property damage—that could have, in theory, been cured by repairs or money. Because the notice did not do so, tenant asserted, it was invalid and he was entitled to dismissal of the FED action.

Landlord responded that ORS 90.392(3)(c) does not require a termination notice to state that a violation can be

cured when it is "implausible" that the tenant could cure the violation within the minimum period of time that the landlord could allow for the violation to be cured. According to landlord, ORS 90.392(3)(c) requires a landlord to state that a violation can be cured only if, at the time of the notice, the landlord believes that the tenant is reasonably capable of curing the violation within that minimum period, which in this case was 14 days because of the type of rental agreement the parties had. Therefore, landlord argued that, because it was "well aware that [tenant] couldn't afford to pay *** twenty or [more] thousand dollars' worth of repairs," and because the damage was so extensive that tenant could not have made repairs within the minimum 14-day period, notice of the right to cure was not required.

The trial court denied tenant's motion to dismiss. The court determined that landlord's notice was valid under ORS 90.392(3)(c), even though it did not state that the violation could be cured, because the repairs that would have been necessary to cure the violation were so costly and extensive that it would have been unreasonable to believe that tenant could have cured the violation within the minimum 14-day period.

C.  *The Court of Appeals Proceeding*

Tenant appealed, assigning error to the denial of his motion to dismiss and arguing that the trial court had misconstrued ORS 90.392(3)(c) as allowing a landlord to make a "subjective" determination regarding whether the tenant could cure the violation within the minimum 14-day period. Tenant argued that ORS 90.392(3)(c) incorporates an "objective" determination that focuses on whether the violation described in the notice "is curable by payment of money, a change in conduct or otherwise." Applying that test, tenant urged, the trial court should have asked, "Is this the type of violation which can be cured?" and not, as it had, "Could this tenant cure these violations if given an opportunity to cure?"

Landlord responded that the trial court correctly determined that notice of the right to cure was not required. Landlord argued that ORS 90.392(3)(c) is "unambiguously subjective," in that it requires a landlord to determine

whether the particular tenant has the practical ability to cure within the minimum 14-day period.

The Court of Appeals affirmed the trial court's denial of tenant's motion to dismiss. *KKMH Properties, LLC*, 326 Or App at 10. In construing ORS 90.392, the court first explained that, in its view, "the question is not so much about whether the determination is 'objective' or 'subjective,' *per se*, but about under what circumstances ORS 90.392(3) and (4) require that a tenant be provided with notice of an opportunity to cure." *Id.* at 6. The court then observed that, under both ORS 90.392(3) and (4), "notice must be given only *if* the violation is one that *can* be cured by the tenant by one of the means listed in ORS 90.392(4)(a)" within the minimum 14-day period. *Id.* at 6-7 (emphases in original). Therefore, the court continued, "[t]he requirement to give notice of an opportunity to cure is dependent on the landlord's assessment whether the violation is one that * * * is reasonably capable of being cured within the prescribed time, *i.e.*, within the minimum notice period that the landlord is required to give." *Id.* at 7.

The Court of Appeals reviewed the trial court's decision, explaining that, as the trial court understood ORS 90.392,

> "if the notice [of the opportunity to cure] is not given, and the landlord establishes that the violation could not have been remedied within the minimum 14-day period, the absence of a notice of an opportunity to cure does not invalidate the termination."

*Id.* The Court of Appeals concluded that "the trial court's construction of the statute was largely correct." *Id.* But the Court of Appeals did not agree with landlord's argument that a tenant's personal circumstances are relevant to whether a termination notice must state that a violation can be cured. *Id.* Instead, the court held that whether a notice must state that a violation can be cured depends

> "on the landlord's assessment whether the violation is one that reasonably *can* be cured within the minimum time period required by ORS 90.392(4)(a)(A) (or the time period provided by the landlord). Contrary to [landlord's] contention, *that does not include the landlord's assessment*

*of the tenant's particular financial ability to cure the viola-tion; rather, it only requires a determination by the landlord whether the violation is one that is reasonably capable of being cured within the prescribed time*[.]"

*Id.* (first emphasis in original; second emphasis added). Thus, as we understand it, the Court of Appeals held that a landlord's notice of termination under ORS 90.392 is not required to state that a violation can be cured if the land-lord determines that it would be unreasonable to believe that any tenant could cure the violation within the prescribed time period. The court based its holding on the text of ORS 90.392(3), which governs the contents of a termination notice, and ORS 90.392(4), which governs when certain violations can be cured. *Id.* at 6-7. Together, those subsections provide:

"(3)   The notice must:

"(a)   Specify the acts and omissions constituting the violation;

"(b)   Except as provided in subsection (5)(a)[(relating to certain repeat violations)], state that the rental agree-ment will terminate upon a designated date not less than 30 days after delivery of the notice; and

"(c)   *If the tenant can cure the violation as provided in subsection (4) of this section, state that the violation can be cured, describe at least one possible remedy to cure the vio-lation and designate the date by which the tenant must cure the violation.*

"(4)(a)   *If the violation described in the notice can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise, the rental agreement does not termi-nate if the tenant cures the violation by the designated date.* The designated date must be:

"(A)   At least 14 days after delivery of the notice; or

"(B)   If the violation is conduct that was a separate and distinct act or omission and is not ongoing, no earlier than the date of delivery of the notice as provided in ORS 90.155. For purposes of this paragraph, conduct is ongoing if the conduct is constant or persistent or has been sufficiently repetitive over time that a reasonable person would con-sider the conduct to be congoing.

> "(b)  *If the tenant does not cure the violation, the rental agreement terminates as provided in the notice.*"

(Emphases added.)

Noting that ORS 90.392(3)(c) requires a landlord to include information about a cure only "[i]f the tenant can cure the violation as provided in subsection (4)," and that, in turn, subsection (4) states that "[i]f the violation described in the notice can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise," the Court of Appeals drew two conclusions. *KKMH Properties, LLC*, 326 Or App at 5-6. First, it concluded that there are two categories of violations: those that can be cured and those that cannot. *Id.* at 6. Second, it concluded that a landlord makes the initial determination of whether a violation can be cured. *Id.* at 5 n 2. The court reasoned:

> "If it is the landlord who must provide notice that the violation is one that can be cured, how it may be cured, the time within which it must be cured, and whether it has been cured, necessarily, it must also be the landlord who makes the initial determination whether the violation reasonably is one that can be cured by one of the means listed in ORS 90.392(4)."

*Id.* In other words, the court reasoned that, because a landlord is the person who must provide information about a possible cure, the landlord is the person who must make the initial determination about whether a violation can be cured.[2]

In addition, the Court of Appeals reframed the issue from whether a violation "can" be cured to whether it "reasonably can be cured." *Id.* at 9. It also linked the determination of whether a violation can be cured to the time period that a landlord allows for a cure, holding that whether a notice must state that a violation can be cured depends on whether the violation reasonably can be cured "within the notice period required by ORS 90.392(4)(a)(A)." *Id.*

---

[2] Presumably, the Court of Appeals stated that the landlord must make the "initial determination" about whether a violation can be cured because, as we discuss below, 373 Or at 698-99, regardless of whether a landlord believes that a tenant can cure a violation, if the tenant has a right to cure the violation and does cure it, then the rental agreement does not terminate.

Applying its construction of ORS 90.392(3)(c) to this case, the Court of Appeals affirmed the trial court's judgment. *Id*. at 10. The Court of Appeals noted that the trial court had found that, "although the violations were subject to 'eventual restoration,' they could not have been cured within the 14-day period that [landlord] was required to provide." *Id*. The Court of Appeals then held that, given that finding, the trial court had correctly concluded that landlord's notice was not required to state that the violation could be cured. *Id*.

Tenant petitioned this court for review, which we allowed to determine the circumstances in which ORS 90.392(3)(c) requires a termination notice to state that a violation can be cured. As we explain below, we conclude that whether a notice must state that a violation can be cured depends on whether the violation is the type of violation that, as a matter of law, can be cured; it does not depend on a landlord's assessment of whether, as a practical matter, a tenant is likely to be capable of curing it. In other words, whether a notice must state that a violation can be cured depends on whether the tenant has a right to cure the violation, and not on whether the landlord believes that it is likely that the tenant will be able to exercise that right.

Consequently, whether a notice must state that a violation can be cured does not depend on an assessment of a tenant's particular circumstances, financial or otherwise. Nor does it depend on whether a tenant could cure the violation within the minimum period that a landlord is required to allow for a cure (or within a longer period that a landlord might choose to allow). The purpose of notifying tenants about the opportunity to cure a violation is to inform them of their rights, and the text, context, and legislative history of ORS 90.392 establish that a tenant has a right to cure all violations that can be the basis of terminations under ORS 90.392, except certain repeat violations for which the legislature has expressly provided that there is no right to cure.

## II.   DISCUSSION

The issue in this case is one of statutory interpretation. We must determine the circumstances in which ORS 90.392(3)(c) requires a termination notice to describe the

right to cure. "In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do so, we look to text, context, and legislative history of the statute. *SAIF v. Ward*, 369 Or 384, 394, 506 P3d 386 (2022); *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

A.   *Background*

Before turning to the text of ORS 90.392, we begin with a brief overview of the statutes governing the termination of residential rental agreements. Those statutes are part of the Oregon Residential Landlord and Tenant Act (ORLTA), which was enacted in 1973, Or Laws 1973, ch 559, and modeled on the Uniform Residential Landlord and Tenant Act (1972) (URLTA). *See Eddy v. Anderson*, 366 Or 176, 186, 458 P3d 678 (2020) (so stating). The ORLTA was intended to "clarify and restate the rights and obligations of tenants and landlords." *L & M Investment Co. v. Morrison*, 286 Or 397, 405, 594 P2d 1238 (1979); *see* ORS 90.115 ("This chapter applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state."). Under the ORLTA, there are several different types of rental agreement terminations, and they have different time periods for termination and notice requirements. For example, there are

- 24-hour terminations for, among other things, threatening or inflicting substantial personal injury on another person on the premises or a neighbor; intentionally inflicting substantial damages to the premises; recklessly endangering a person on the premises; and committing any act that is "outrageous in the extreme" on or in the immediate vicinity of the premises, ORS 90.396;

- 10- and 13-day terminations for nonpayment of rent, ORS 90.394;[3] and

- 30-day terminations for material violations of the rental agreement, material violations of ORS 90.325 (which governs a tenant's use of premises), and nonpayment of rent, ORS 90.392(4), as well as 10-day terminations

---

[3] Under ORS 90.394, terminations can occur in 10 days if the notice is given on or after the eighth day of the rental period, and they can occur in 13 days if the notice is given on or after the fifth day of the rental period.

for those violations if the same or similar conduct was the basis for a termination notice in the previous six months, ORS 90.392(5).[4]

The different types of terminations are often referred to by the minimum amount of time that the landlord must allow before the rental agreement terminates under the relevant statute. This case concerns a "30-day" termination under ORS 90.392.[5]

If a landlord validly terminates a rental agreement, then the landlord is entitled to possession of the premises, as provided by ORS 105.105 to 105.168, which govern FED actions. ORS 90.392(1). If the tenant does not vacate the premises, then the landlord may bring an FED action to evict the tenant. ORS 105.115(2)(a)(B); *Hickey*, 370 Or at 103 ("The FED statutes permit a landlord to bring an action to recover possession of a dwelling unit when *** a tenant 'remains in possession after a valid notice terminating the tenancy pursuant to ORS chapter 90.'" (Quoting ORS 105.115(2)(a)(B).)). In the FED action, the trial court shall apply "ORS chapter 90 *** to determine the rights of the parties, including *** [w]hether a tenancy or rental agreement has been validly terminated." ORS 105.115(3)(b). In order to validly terminate a rental agreement, a landlord must have delivered a termination notice that includes the information required by statute. *C.O. Homes, LLC*, 366 Or at 219. If, in the FED action, a tenant proves that the notice did not include that information, the tenant will prevail. *Hickey*, 370 Or at 110-11. But the landlord can continue to attempt to terminate the rental agreement by filing a new notice. *Id.* at 112.

B.   *Text*

The statute at issue in this case, ORS 90.392, contains several provisions, which govern different aspects of "for cause" terminations. The provisions

---

[4]   Under ORS 90.392, the statute at issue in this case, terminations can occur in 30 days, unless the violation is a repeat violation that was the subject of a termination notice within the previous six months, in which case they can occur in 10 days.

[5]   Again, because landlord sought to terminate the rental agreement pursuant to ORS 90.392, we are not called upon to address, and do not address, whether landlord could have terminated the rental agreement under ORS 90.396, which allows for terminations based on, among other things, conduct that is "outrageous in the extreme," some of which is not curable as a matter of law.

- authorize termination for certain causes, ORS 90.392(1), (2);

- describe the required contents of a notice of termination for those causes, ORS 90.392(3)(a) - (c);

- state that, if a certain type of violation is cured, the agreement does not terminate, ORS 90.392(4)(a), but if the violation is not cured, the agreement terminates, ORS 90.392(4)(b);

- establish time periods for curing that type of violation, ORS 90.392(4)(a)(A) - (B);

- state that another type of violation cannot be cured (specifically, a violation for "substantially the same act or omission that constituted a prior violation for which notice was given under this section within the previous six months"), ORS 90.392(5); and

- set out the time periods for terminations for different types of tenancies, ORS 90.392(3)(b); ORS 90.392(6).

Although ORS 90.392 is lengthy, we set it out in full, because, when construing a statutory provision, we analyze the provision's text in context, which includes other provisions of the same statute. *Martineau v. McKenzie-Willamette Medical Center*, 371 Or 247, 261, 533 P3d 1, *adh'd to as modified on recons*, 371 Or 408, 537 P3d 542 (2023) (citing *PGE*, 317 Or at 611). ORS 90.392 states:

"(1)   Except as provided in this chapter, after delivery of written notice a landlord may terminate the rental agreement for cause and take possession as provided in ORS 105.100 to 105.168, unless the tenant cures the violation as provided in this section.

"(2)   Causes for termination under this section are:

"(a)   Material violation by the tenant of the rental agreement. For purposes of this paragraph, material violation of the rental agreement includes, but is not limited to, the nonpayment of a late charge under ORS 90.260 or a utility or service charge under ORS 90.315.

"(b)   Material violation by the tenant of ORS 90.325.

"(c)   Failure by the tenant to pay rent.

"(3)   *The notice must*:

"(a)   Specify the acts and omissions constituting the violation;

"(b)   Except as provided in subsection (5)(a) of this section, state that the rental agreement will terminate upon a designated date not less than 30 days after delivery of the notice; and

"(c)   *If the tenant can cure the violation as provided in subsection (4) of this section, state that the violation can be cured, describe at least one possible remedy to cure the violation and designate the date by which the tenant must cure the violation.*

"(4)(a)   *If the violation described in the notice can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise, the rental agreement does not terminate if the tenant cures the violation by the designated date.* The designated date must be:

"(A)   At least 14 days after delivery of the notice; or

"(B)   If the violation is conduct that was a separate and distinct act or omission and is not ongoing, no earlier than the date of delivery of the notice as provided in ORS 90.155. For purposes of this paragraph, conduct is ongoing if the conduct is constant or persistent or has been sufficiently repetitive over time that a reasonable person would consider the conduct to be ongoing.

"(b)   If the tenant does not cure the violation, the rental agreement terminates as provided in the notice.

"(5)(a)   *If the cause of a written notice delivered under subsection (1) of this section is substantially the same act or omission that constituted a prior violation for which notice was given under this section within the previous six months, the designated termination date stated in the notice must be not less than 10 days after delivery of the notice and no earlier than the designated termination date stated in the previously given notice. The tenant does not have a right to cure this subsequent violation.*

"(b)   A landlord may not terminate a rental agreement under this subsection if the only violation is a failure to pay the current month's rent.

"(6)   When a tenancy is a week-to-week tenancy, the notice period in:

"(a)   Subsection (3)(b) of this section changes from 30 days to seven days;

"(b)   Subsection (4)(a)(A) of this section changes from 14 days to four days; and

"(c)   Subsection (5)(a) of this section changes from 10 days to four days.

"(7)   The termination of a tenancy for a manufactured dwelling or floating home space in a facility under ORS 90.505 to 90.850 is governed by ORS 90.630 and not by this section."

(Emphases added.) Thus, as relevant here, ORS 90.392 provides that a landlord "may terminate" a rental agreement based on a tenant's material violation of the parties' rental agreement, "unless the tenant cures the violation as provided in this section." ORS 90.392(1), (2)(a). It further provides that, if the violation "can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise, the rental agreement does not terminate if the tenant cures the violation by the designated date." ORS 90.392(4)(a). But, "[i]f the tenant does not cure the violation, the rental agreement terminates as provided in the notice." ORS 90.392(4)(b). As relevant here, the designated date for a cure of an ongoing violation must be at least 14 days after the delivery of the notice. ORS 90.392(4)(a)(A).

ORS 90.392 goes on to provide that a tenant does not have a right to cure certain violations, specifically, those that are for "substantially the same act or omission that constituted a prior violation for which notice was given under this section within the previous six months." ORS 90.392 (5)(a). In other words, a tenant does not have a right to cure certain repeat violations.

ORS 90.392 also establishes the minimum time period for termination. If a violation is the type that can be cured under subsection (4), then the termination date must be "not less than 30 days after delivery of the notice." ORS 90.392(3)(b). But, if a violation is the type of repeat violation described in subsection (5), then the termination date must be "not less than 10 days after delivery of the notice and no earlier than the *** date stated in the previously

given notice." ORS 90.392(5)(a). Thus, if a violation is the type that can be cured under subsection (4), then a tenant is entitled to a minimum of 14 days from the date of the notice to cure the violation and 30 days from the date of the notice to vacate the premises if they do not cure the violation. But, if a violation is not the type that can be cured as described in subsection (4) and is instead the type of repeat violation covered by subsection (5), then the tenant is entitled only to a minimum of 10 days from the date of the notice to vacate the premises. Subsection (5) does not include a cure period, and it expressly states that a tenant "does not have a right to cure this subsequent violation."

Finally, ORS 90.392 provides that, to terminate a rental agreement under ORS 90.392, a landlord must deliver a written notice to the tenant that complies with ORS 90.392(3). Under ORS 90.392(3), a written notice must satisfy three requirements, the third of which is at issue here:

"The notice must:

"(a)  Specify the acts and omissions constituting the violation;

"(b)  Except as provided in subsection (5)(a) of this section, state that the rental agreement will terminate upon a designated date not less than 30 days after delivery of the notice; and

"(c)  *If the tenant can cure the violation as provided in subsection (4) of this section*, state that the violation can be cured, describe at least one possible remedy to cure the violation and designate the date by which the tenant must cure the violation."

(Emphasis added.)

Altogether, ORS 90.392 establishes a complete and coherent process for "for cause" terminations of residential rental agreements. As the Court of Appeals concluded, the plain text of the statute indicates that, for the purposes of ORS 90.392, there are two categories of violations: those that can be cured and those that cannot. Subsection (3)(c) uses the phrase "[i]f the tenant can cure the violation as provided in subsection (4)," and subsection (4), in turn, uses the

phrase "[*i*]*f* the violation described in the notice can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise." (Emphases added.)

The text of subsection (4) creates a broad category of violations. It covers violations that can be cured by the tenant through "a change in conduct, repairs, payment of money *or otherwise.*" ORS 90.392(4)(a) (emphasis added). The term "otherwise" can mean "in a different way or manner" or "differently." *Webster's Third New Int'l Dictionary* 1598 (unabridged ed 2002). Thus, subsection (4) applies to violations that can be cured by a change of conduct, repairs, payment of money, or "in a different way or manner" or "differently." As written, subsection (4) appears to cover every means of curing a violation. To illustrate, a violation based on a noise complaint could be cured by a change in conduct; a violation based on property damage could be cured by repairs; a violation based on a failure to pay rent or a fee could be cured by the payment of money; and a violation based on other conduct, for example, having trash or unpermitted vehicles on the premises, could be otherwise cured, by removing those items from the premises. Thus, subsection (4) appears to apply to all violations, except those that cannot be cured as a matter of law.[6]

That understanding is supported by subsection (5), which concerns certain repeat violations and states that a tenant "does not have a right to cure" those violations. Again, subsection (5) provides, in relevant part:

> "*If the cause* of a written notice delivered under subsection (1) of this section *is substantially the same act or omission that constituted a prior violation for which notice was given under this section within the previous six months*, the designated termination date stated in the notice must be not less than 10 days after delivery of the notice and no earlier than the designated termination date stated in the previously given notice. *The tenant does not have a right to cure this subsequent violation.*"

ORS 90.392(5)(a) (emphases added).

_____

[6] Subsection (4) appears to cover all means of curing a violation, and there may be multiple ways that a violation could be cured. For example, property damage could be cured by repairs, the payment of money, or otherwise.

Subsections (4) and (5) work together to distinguish violations that can be cured and violations that cannot be cured. Subsection (4) covers all violations that can be cured by any means, except those violations covered by subsection (5), which are limited to certain repeat violations. That indicates that, for the purposes of ORS 90.392, a tenant has a right to cure all violations, except repeat violations covered by subsection (5).

Correspondingly, to terminate a rental agreement under ORS 90.392, if a violation is one that a tenant has a right to cure, then, under ORS 90.392(3)(c), the termination notice must "state that the violation can be cured, describe at least one possible remedy to cure the violation and designate the date by which the tenant must cure the violation."

Thus, reading ORS 90.392 as a whole indicates that the only circumstance when a termination notice under the statute does not need to state that the violation can be cured is when the violation is a repeat violation covered by subsection (5), because those violations cannot be cured as a matter of law.

Notably, nothing in the text of ORS 90.392 suggests that whether a violation can be cured is up to the landlord. ORS 90.392(4) provides that, "[i]f the violation described in the notice can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise, the rental agreement does not terminate if the tenant cures the violation by the designated date." It does *not* provide that, "[i]*f the landlord determines that* the violation described in the notice can be cured by the tenant by a change in conduct, repairs, payment of money or otherwise, the rental agreement does not terminate if the tenant cures the violation by the designated date."

Nor does anything in the text of ORS 90.392 suggest that whether a termination notice must state that a violation can be cured depends on whether it is likely that the tenant has the practical ability to cure the violation. On review, landlord argues, as it did in the lower courts, that whether a notice must state that a violation can be cured depends on the landlord's "subjective assessment in good faith as to whether a violation is capable of cure by the resident within

fourteen days." That is, landlord argues that whether a termination notice must state that a violation can be cured depends on whether the landlord reasonably believes that the tenant can cure the violation within the minimum time period that a landlord could allow for a cure. But the text of ORS 90.392(3) does not refer to a landlord's belief. That is significant because other statutes in the ORLTA do. For example, ORS 90.147(2)(b) provides that "delivery of possession" of rental premises from a tenant back to a landlord occurs, among other times, when, after the end of a term tenancy, "the landlord reasonably believes under all the circumstances that the tenant has relinquished or no longer claims the right to occupy the dwelling." Similarly, ORS 90.425(2) governs the rights of tenants and landlords with respect to personal property when, among other times, "the landlord reasonably believes under all the circumstances that the tenant has left the personal property upon the premises with no intention of asserting any further claim to the premises or to the personal property." The fact that other statutes in the ORLTA reference a landlord's reasonable belief, but ORS 90.392(3)(c) does not, indicates that whether a termination notice under ORS 90.392 needs to state that a violation can be cured does not depend on the landlord's subjective assessment of the likelihood that the tenant can cure the violation within the prescribed time period.

In arguing otherwise, landlord relies on the fact that ORS 90.392(4) concerns violations that "*can* be cured by the tenant" and ORS 90.392(3) requires that a notice state a cure "[i]f the tenant *can* cure the violation." (Emphases added.) Landlord reads "can" to mean "is able to as a practical matter." But that is not the only meaning of "can." The term also means "has a right to." *See Webster's* at 323 (defining "can" as both "be physically or mentally able to" and "be enabled by law, agreement, or custom to **:** have a right to" and "have permission to"); *Black's Law Dictionary* 218 (8th ed 2004) (defining "can" to mean both "[t]o be able to do something" and "[t]o have permission (as often interpreted by courts); MAY < no appeal can be filed until the filing fee is paid>"). Thus, the references to violations that a tenant "can" cure is consistent with our interpretation of the text of ORS 90.392.

Moreover, the text of ORS 90.392(3)(c) indicates that, contrary to both landlord's argument on review and the Court of Appeals' decision, whether a termination notice must state that a violation can be cured does not depend on the time limit for curing the violation. The requirements in ORS 90.392(3) relating to the opportunity to cure are textually separate from the requirements relating to the minimum cure period. Again, ORS 90.392(3) sets out the required contents for a termination notice:

"*The notice must*:

"(a)   Specify the acts and omissions constituting the violation;

"(b)   Except as provided in subsection (5)(a) of this section, state that the rental agreement will terminate upon a designated date not less than 30 days after delivery of the notice; and

"(c)   *If the tenant can cure the violation* as provided in subsection (4) of this section, state that the violation can be cured, describe at least one possible remedy to cure the violation and *designate the date by which the tenant must cure the violation*."

(Emphases added.) Thus, under subsection (3)(c), *if* the tenant can cure the violation, *then* the notice must designate a deadline for the cure. The determination regarding whether the tenant can cure the violation is made before and independently of the setting of the date for the cure.

In sum, the plain text of ORS 90.392 indicates that, for purposes of "for cause" terminations under that statute, there are two categories of violations: those that can be cured and those that cannot. Subsections (4) and (5), considered together, inform what violations fall into each category. Subsection (4) applies to violations that "can be cured by the tenant by a change in conduct, repairs, payment of money or *otherwise*." (Emphasis added.) The breadth of those means of curing indicates that subsection (4) applies to all violations, except those that cannot be cured as a matter of law. Subsection (5) supports that understanding. It provides that a tenant "does not have a right to cure" certain repeat violations. Thus, subsections (4) and (5) indicate that a tenant

has a right to cure all violations except repeat violations covered by subsection (5), because those violations cannot be cured as a matter of law. Relatedly, under ORS 90.392 (3)(c), a termination notice must state that a violation can be cured "[i]f the tenant can cure the violation as provided in subsection (4) of this section." Therefore, reading the provisions of ORS 90.392 together indicates that a termination notice must state that the violation can be cured for all violations except those that a tenant does not have a right to cure as a matter of law.

C.  *Context*

The context of ORS 90.392 supports the view that a termination notice must state that a violation can be cured if it is the type of violation that a tenant has a right to cure, regardless of whether the landlord believes that the tenant will be able to exercise that right.

ORS 90.392's context includes related case law, *Hickey*, 370 Or at 107, and this court's cases establish that the purpose of the statutory requirements regarding the contents of termination notices is to ensure that tenants are provided with information so they can take action to prevent termination of their rental agreements and defend against evictions. As this court has stated, "the notice statutes [under the ORLTA] require precise and accurate information so that the tenant does not have to guess as to the exact nature of the breach and can be prepared to defend against it." *Id.* at 111; *see also id.* at 109 (relying on that purpose as support for holding that a termination notice for nonpayment of rent under ORS 90.394 must "include a precise and accurate statement of the rent that must be paid to cure the nonpayment of rent"). The notice statutes are intended to provide a tenant with actionable information regarding what they can do in response. *See Ostlund v. Hendricks*, 289 Or 543, 549, 615 P2d 327 (1980) (holding that a landlord's letter, which stated that the tenant had 30 days from receipt to cure an alleged violation but did not designate a specific date for termination, had not provided valid notice, explaining that "[t]he tenant should not have to guess whether she is receiving an actual notice of termination, or a letter threatening a future termination notice").

Accepting the construction of ORS 90.392(3)(c) that landlord urges in this case would undermine the purpose of the provision's notice requirement. It would allow a landlord to deliver a termination notice that does not inform the tenant of the tenant's right to cure a violation, if the landlord believes that the tenant will not be able to exercise that right. For example, under landlord's construction of ORS 90.392(3)(c), if a landlord believes that a tenant will not be able to pay an overdue fee, then the termination notice does not have to state that the tenant could cure the violation by paying the fee. Upon receiving the notice, the tenant might believe that they have no choice but to vacate the premises. If the tenant vacates, they will have left their housing without having received notice of what they could have done to stay in their housing, which would be contrary to the purpose of the notice requirement.[7]

ORS 90.392's context also includes related statutes, and the ORLTA statutes and the FED statutes are related. *See Hickey*, 370 Or at 107-08 ("[T]his court has examined the ORLTA together with the substantive FED statutes contained in ORS chapter 105, explaining that the two chapters are intended to be read together when seeking to determine the legislature's intent[.]" (Citing *Executive Management Corp. v. Juckett*, 274 Or 515, 518, 547 P2d 603 (1976) ("We conclude that the forcible entry and detainer statutes and the Residential Landlord and Tenant Act are not unrelated statutes.").)). Indeed, ORS 90.392 itself references the FED statutes. ORS 90.392(1) ("Except as provided in this chapter, after delivery of written notice a landlord may terminate

---

[7] Under landlord's construction of ORS 90.392(3)(c), a landlord's belief about whether the tenant could cure a violation would have to be a "good faith" belief. But a landlord's good faith belief could be incorrect. *See Eddy*, 366 Or at 188 (holding that, under the ORLTA, "'good faith' turns on a party's subjective intentions," and, therefore, "a person who acts in a manner expressly permitted by the ORLTA does not breach the duty of good faith unless the person has acted dishonestly as to the matter" (internal quotation marks omitted)). A landlord might have a general knowledge of a tenant's financial circumstances based on the tenant's rental application or statements to the landlord. But, even with that general knowledge, the landlord might not know that, when faced with losing their housing, the tenant might be able to secure additional resources from family, friends, community organizations, or government agencies. If the landlord's termination notice for nonpayment of a fee fails to inform the tenant that the violation can be cured, the tenant might believe that there is no reason to seek emergency assistance to prevent the loss of their housing.

the rental agreement for cause and take possession as provided in ORS 105.100 to 105.168, unless the tenant cures the violation as provided in this section."). The connection between ORS 90.392 and the FED statutes is significant because, under the FED statutes, whether a tenant can cure a violation is a matter of law and a landlord cannot eliminate a tenant's right to cure a violation. ORS 105.115(3)(b); ORS 90.392(4). For example, if a tenant fails to pay a fee and the landlord issues a 30-day termination notice under ORS 90.392(4) (as opposed to a 10-day notice for a repeat violation subject to ORS 90.392(5)), then the tenant can pay the fee and, thereby, cure the violation. That is true even if the termination notice failed to state that the violation could be cured or affirmatively stated that the violation could not be cured. If, despite the tenant's payment of the fee, the landlord brings an FED action against the tenant, then the tenant can, as a defense, prove that they paid the fee. If the tenant does so, then the FED trial court will resolve the action in the tenant's favor. That shows that a landlord cannot eliminate a tenant's right to cure a violation. And, if a tenant has a right to cure a violation, a termination notice under ORS 90.392 should inform the tenant of that right.

In some cases, it may be unlikely that the tenant will be able to exercise their right to cure a violation. But the legislature wanted tenants to know about their rights, and requiring a landlord to state that a tenant has a right to cure a violation is a "slight burden." *See Hickey*, 370 Or at 113-14 ("Requiring a landlord to 'specify' accurately the amount of rent that must be paid to cure the nonpayment in the termination notice, or face possible dismissal of an FED action with the option to refile after issuance of a valid termination notice, is a slight burden and one that the legislature chose to balance the interest[s] of the parties in a case such as this."). If a tenant ultimately is unable to cure a violation by the designated cure date, then the rental agreement will end on the designated termination date. Thus, in the case of a 30-day notice, the 30 days will run and the tenant will have to vacate the premises or be evicted.[8]

_____

[8] Again, this case concerns a 30-day termination under ORS 90.392, for which the minimum time-to-termination is 30 days. When a landlord proceeds with a 30-day termination under ORS 90.392, a tenant can stay in the rental

In sum, the context of ORS 90.392 includes both (1) this court's case law, which explains that the purpose of the ORLTA's notice statutes is to ensure that a tenant has actionable information to prevent termination and defend against eviction, and (2) the FED statutes related to ORS 90.392, under which a tenant can, as a defense, prove that they cured the violation. And, both the case law and the FED statutes indicate that a termination notice should inform the tenant of their right to cure when the tenant has that right, regardless of whether the landlord believes that the tenant will be able to exercise that right.

### D.  *History of ORS 90.392*

Finally, prior versions of ORS 90.392 and its legislative history also support that view. They show that the legislature intended tenants to have the right to cure violations on which 30-day "for cause" terminations under ORS 90.392(4) are based, but that it did not intend tenants to have the right to cure repeat violations on which 10-day "for cause" terminations under ORS 90.392(5) are based. They further show that the legislature intended to require termination notices to state that violations can be cured when the violations are curable as a matter of law.

#### 1.  *1973 - Original "for cause" termination provision*

As mentioned, the ORLTA was enacted in 1973. It included a predecessor to ORS 90.392, *former* ORS 91.820 (1973), which, as we will recount, was later renumbered as *former* ORS 90.400 (1989) and ultimately repealed by Oregon Laws 2005, chapter 391, section 7, when the legislature enacted ORS 90.392.

*Former* ORS 91.820 (1973) authorized "for cause" terminations of rental agreements, including a 30-day termination with a 14-day cure period, and a 10-day termination with no cure period for certain repeat violations:

> "(1)(a)   Except as provided in ORS 91.700 to 91.865, if there is a material noncompliance by the tenant with the rental agreement or a noncompliance with ORS 91.775

---

premises for at least 30 days. But, as noted above, another termination statute, ORS 90.396, provides for a shorter minimum time-to-termination, specifically, 24 hours.

materially affecting health and safety, the landlord may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice. If the breach is not remedied in 14 days, the rental agreement shall terminate as provided in the notice subject to paragraphs (b) and (c) of this subsection.

"(b)   If the breach is remedial [*sic*] by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate.

"(c)   If substantially the same act or omission which constituted a prior noncompliance of which notice was given recurs within six months, the landlord may terminate the rental agreement upon at least 10 days' written notice specifying the breach and the date of termination of the rental agreement.

"(2)   If rent is unpaid when due and the tenant fails to pay rent within 10 days thereafter the landlord, after 24 hours' written notice of nonpayment and his intention to terminate the rental agreement if the rent is not paid within that period, may immediately terminate the rental agreement and take possession.

"(3)   Except as provided in ORS 91.700 to 91.865, the landlord may recover damages and obtain injunctive relief for any noncompliance by the tenant with the rental agreement or ORS 91.775."

*Former* ORS 91.820 (1973) was based on a URLTA provision, which provided that, "[i]f the breach is remediable by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate." Uniform Residential Landlord and Tenant Act § 4.201 (1972), *reprinted in* 7A Uniform Laws Annotated 547 (1978). Although the URLTA provision used the term "remediable," *former* ORS 91.820(1)(b) (1973) used the term "remedial." The legislative history of *former* ORS 91.820 (1973) does not contain an explanation for the use of the term "remedial," but the term's context indicates that the legislature was using it to refer to a violation that could be remedied, given

that *former* ORS 91.820(1)(b) (1973) stated, "If the breach is *remedial* [*sic*] *** and the tenant adequately *remedies* the breach *** the rental agreement shall not terminate." (Emphases added.)

As enacted in 1973, *former* ORS 91.820 (1973) did not require that a termination notice state that a violation could be cured. A notice was required only to describe the violation and designate the date on which the rental agreement would terminate. *Former* ORS 91.820(1)(a) (1973) ("[T]he landlord may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice."). The statute did, however, afford a tenant a 14-day right to cure a violation unless the violation was a repeat violation. Specifically, a tenant had a 14-day period in which to remedy a violation "subject to paragraphs (b) and (c)." *Former* ORS 91.820 (1)(a) (1973). Under paragraph (b), if the violation was "remedial [*sic*]" by one of the listed means and the tenant, during the 14-day period, "adequately remedie[d] the breach," the rental agreement did not terminate. *Former* ORS 91.820 (1)(b) (1973). Under paragraph (c), if the violation was a repeat violation—that is, "substantially the same act or omission which constituted a prior noncompliance of which notice was given [that] recur[red] within six months"—a landlord was authorized to terminate the rental agreement upon 10 days' notice. *Former* ORS 91.820(1)(c) (1973). Thus, pursuant to paragraph (c), a tenant did not have the 14-day right to cure a repeat violation, and, unlike for violations under paragraph (b), a landlord's authority to terminate for a repeat violation did not depend on whether the tenant had "adequately remedie[d] the breach."

Therefore, as ORS 90.392 does today, the original ORLTA statute governing "for cause" terminations authorized 30-day terminations and afforded a tenant a 14-day right to cure those violations and avoid termination. *Former* ORS 91.820(1)(a), (b) (1973). It also authorized 10-day terminations for certain repeat violations but did not afford tenants the right to cure those violations. *Former* ORS 91.820 (1)(c) (1973). Although the statute afforded tenants the right

to cure violations that were the basis of 30-day termina-
tions, it did not require termination notices to state that the
violations could be cured.[9]

2.   *1989 - Amendment to include notice of right to cure*

The legislature amended the statute governing ter-
mination for cause in 1989 through the passage of Senate
Bill (SB) 602 (1989), and, in doing so, imposed the first notice
requirement relating to the right to cure. Or Laws 1989,
ch 506, § 13.[10] Upon that amendment, the "for cause" termi-
nation statute, which had been renumbered as *former* ORS
90.400 (1989), stated, in part:

"(1)(a)   Except as provided in ORS 90.100 to 90.940, if
there is a material noncompliance by the tenant with the
rental agreement or a noncompliance with ORS 90.325
materially affecting health and safety, the landlord may
deliver a written notice to the tenant terminating the
tenancy for cause as provided in this subsection. The
notice shall specify the acts and omissions constituting
the breach and shall state that the rental agreement will
terminate upon a date not less than 30 days after receipt
of the notice. *If the breach is remedial* [*sic*] *by repairs or
the payment of damages or otherwise, the notice shall also*

_____

[9] As mentioned, the ORLTA was based on the URLTA. *Eddy*, 366 Or at
186. *Former* ORS 91.820(1) (1973) mirrored URLTA section 4.201(a). According
to the reporters of the Revised Uniform Residential Landlord and Tenant Act
(2015) (RURLTA), under URLTA section 4.201(a), a tenant had a right to cure
a violation that was the basis of a 30-day termination. *See* Sheldon F. Kurtz &
Alice Noble-Allgire, *The Revised Uniform Residential Landlord & Tenant Act:
A Perspective from the Reporters*, 52 Real Prop, Tr & Est L J 417, 461-62 (2018)
(observing that, with respect to 30-day terminations under both URLTA section
4.201(a) and RURLTA section 601(a)(2), "the notice must give the tenant four-
teen days to remedy the noncompliance, but the actual termination date must be
at least thirty days after the landlord gives the notice"); *see also Liberty Manor
v. Rinnels*, 487 NW2d 324, 326 (Iowa 1992) (construing the Iowa provision that
was based on URLTA section 4.201 and rejecting the landlord's argument that
whether a violation is remediable "is a fact question for the trial court," holding,
"the fourteen-day notice to remedy must still be given").

[10] Since enacting the "for cause" termination provision in 1973, Or Laws
1973, ch 559, § 23, the legislature has amended the provision 15 times. Or Laws
1975, ch 256, § 3; Or Laws 1979, ch 573, § 1a; Or Laws 1979, ch 765, § 3; Or Laws
1981, ch 753, § 3; Or Laws 1983, ch 303, § 1; Or Laws 1987, ch 611, § 9; Or Laws
1989, ch 506, § 13; Or Laws 1993, ch 369, § 12; Or Laws 1995, ch 559, § 26; Or
Laws 1997, ch 577, § 23; Or Laws 1999, ch 603, § 24; Or Laws 1999, ch 676, § 15;
Or Laws 2001, ch 596, § 33; Or Laws 2003, ch 378, § 13; Or Laws 2005, ch 391, § 7.
This discussion describes only those amendments that relate to the requirement
under that statute to provide notice of the right to cure.

*state that the tenant can avoid termination by remedying the breach within 14 days*.

"(b)   If the breach is not remedied in 14 days, the rental agreement shall terminate as provided in the notice subject to paragraphs (c) and (d) of this subsection.

"(c)   If the breach is remedial [*sic*] by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate.

"(d)   If substantially the same act or omission which constituted a prior noncompliance of which notice was given recurs within six months, the landlord may terminate the rental agreement upon at least 10 days' written notice specifying the breach and the date of termination of the rental agreement."

(Emphasis added.)

The spokesperson for the Coalition for Affordable Housing, the workgroup that drafted SB 602, explained that the bill "amends the eviction for cause statute to clarify that a 30 day notice for cause must state the right to cure." Exhibit K, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, SB 602, May 15, 1989 (accompanying statement of Michael H. Marcus); *see also* Staff Measure Summary, Senate Committee on Business, Housing and Finance, SB 602, Apr 20, 1989 (explaining that the amendment "[s]tates that eviction for cause must state right to cure"). The spokesperson explained that the purpose of the amendment was to ensure that 30-day "for cause" termination notices inform tenants of their right to cure. He stated that the amendment "clarifies the eviction for cause procedure," to, among other things,

"make it clear that the notice has to state that the tenant has a right to cure. *The right to cure already exists under existing law. This makes it clear—there's been some dispute in the courts about whether the notice has to tell the tenant that—this makes it clear that it has to say that*."

Tape Recording, Senate Committee on Business, Housing and Finance, SB 602, Apr 11, 1989, Tape 63, Side A (statement of Michael H. Marcus) (emphasis added); *see also* Tape Recording, House Committee on Judiciary, Subcommittee

on Civil Law and Judicial Administration, SB 602, May 15, 1989, Tape 98, Side B (statement of Michael H. Marcus) (stating that, if the cause of a termination notice is "one subject to cure, the right to cure has to be stated in the notice").

Therefore, when creating the notice requirement, the legislature understood that a tenant already had "[t]he right to cure" certain violations and sought to make it clear that a termination notice had "to tell the tenant that." Tape Recording, Senate Committee on Business, Housing and Finance, SB 602, Apr 11, 1989, Tape 63, Side A (statement of Michael H. Marcus). Accordingly, it imposed the notice requirement for the situations in which "the breach is remedial [*sic*] by repairs or the payment of damages or otherwise." *Former* ORS 90.400(1)(a) (1989). That is, it imposed a notice requirement for violations that are the basis for a 30-day termination, but not those repeat violations that are the basis for a 10-day termination. *See former* ORS 91.820 (1)(b) - (c) (1973) (authorizing termination of a rental agreement after a minimum of 30 days, but providing that the rental agreement did not terminate if the violation was "remedial [*sic*] by repairs or the payment of damages or otherwise" and the tenant "adequately remedie[d] the breach" within 14 days); *former* ORS 90.400(1)(c) - (d) (1989) (same).

### 3.   *2005 - Amendment of statute to current form*

Through the passage of House Bill (HB) 2524 (2005), the legislature brought the statute governing terminations for cause into its current form, now codified at ORS 90.392. Or Laws 2005, ch 391, § 7. The 2005 amendment made three substantive changes relating to the right to cure. The first two were amendments to the provision governing termination notices; one amendment added the requirement that a termination notice "describe at least one possible remedy to cure the violation" and the other added the requirement that a notice "designate the date by which the tenant must cure the violation." *Id.* The purpose of those amendments was to provide tenants with even more information about how to prevent the termination of their rental agreements. As a spokesperson for the General Landlord-Tenant Coalition that drafted the bill explained,

"[c]urrent ORS 90.400 allows a landlord to terminate a tenancy with a 30-day for-cause termination notice; the tenant has 14 days to cure the cause, for example, by repairing tenant-caused damage or removing a broken-down car. *The bill will amend this statute to \*\*\* require a 30-day cause termination notice to describe a cure and state the deadline for the cure.*"

Exhibit G, House Committee on Judiciary, Subcommittee on Civil Law, HB 2524, Mar 28, 2005 (accompanying statement of John VanLandingham) (emphasis added); Tape Recording, Senate Committee on Rules, HB 2524, June 1, 2005 (statement of John VanLandingham) (explaining that a 30-day "for cause" termination notice "requires a 14-day cure period"; "[i]n other words, the landlord says to the tenant 'you've violated X, and because of that your tenancy terminates in 30 days but you have 14 days to cure it'"). The spokesperson further explained that, although the amendment would require a landlord to identify one possible cure, whether a tenant cured a violation would ultimately be up to judge, if the matter was disputed:

"The 30-day termination notice must now describe at least one possible cure—not the only cure, mind you; the judge will ultimately decide what is a cure—and specify the cure date, for example: 'To avoid this termination, you must pay the late charge [a cure] by June 15 [the cure date], or your tenancy will terminate on July 1.'"

Exhibit H, Senate Committee on Rules, HB 2524A, June 1, 2005 (accompanying statement of John VanLandingham).

The third substantive amendment created a new provision, current ORS 90.392(4)(a)(B), to permit a landlord to demand an immediate cure (as opposed to a cure within 14 days) for "conduct that was a separate and distinct act or omission and is not ongoing," such as a loud party. As the spokesperson explained,

"[l]andlords have expressed concern that, for some conduct, the 14 day cure period appears to be a license for the tenant to repeat the violation that prompted the termination notice. For example, when a landlord gives a for cause termination notice with the required 14 day cure period because a tenant has thrown a wild party or threatened a neighbor, the tenant can repeat that party or the

threatening behavior over the next 14 days and—if he stops doing it on the 14th day—still cure the violation and avoid termination.

"This new section addresses this problem by allowing a landlord to require an immediate cure for certain kinds of violations—those violations that are separate and distinct acts or omissions and that also are not ongoing—without having to wait 14 days for the cure. For these violations, the tenant must cure the violation immediately."

Exhibit H, Senate Committee on Rules, HB 2524, June 1, 2005 (accompanying statement of John VanLandingham). That amendment changed the cure period for certain violations, but it did not eliminate the right to cure them.

HB 2524 also updated the phrasing of the statute. As set out above, when originally enacted, the "for cause" termination statute referred to violations that were "remedial." It provided, *"If the breach is remedial* [*sic*] by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate." *Former* ORS 91.820(1)(b) (1973) (emphasis added). The text of that provision remained the same when it was renumbered in 1989. *Former* ORS 90.400(1)(c) (1989). That same year, the legislature added the requirement that a 30-day notice state that the violation can be cured and again used the phrase "if the breach is remedial." *Former* ORS 90.400(1)(a) (1989). The requirement stated, *"If the breach is remedial* [*sic*] by repairs or the payment of damages or otherwise, the notice shall also state that the tenant can avoid termination by remedying the breach within 14 days." *Id.* (emphasis added). In 2005, HB 2524 replaced the phrase "[i]f the breach is remedial" with the phrases "[i]f the tenant can cure the violation" and "[i]f the violation described in the notice can be cured by the tenant." Specifically, it amended the statute to read:

"(2)   Causes for termination under this section are:

"(a)   Material violation by the tenant of the rental agreement. * * *

"* * * * *

"(3)   The notice must:

"(a)   Specify the acts and omissions constituting the violation;

"(b)   Except as provided in subsection (5)(a) of this section, state that the rental agreement will terminate upon a designated date not less than 30 days after delivery of the notice; and

"(c)   *If the tenant can cure the violation as provided in subsection (4) of this section,* state that the violation can be cured, describe at least one possible remedy to cure the violation and designate the date by which the tenant must cure the violation.

"(4)(a)   *If the violation described in the notice can be cured by the tenant* by a change in conduct, repairs, payment of money or otherwise, the rental agreement does not terminate if the tenant cures the violation by the designated date. \*\*\*"

(Emphases added.) The change in phrasing was not intended to be substantive. It was intended to make the statute "clearer." Exhibit G, House Committee on Judiciary, Subcommittee on Civil Law, HB 2524, Mar 28, 2005 (accompanying statement of John VanLandingham) (stating that HB 2524 "revised" the then-operative statue, *former* ORS 90.400(1) (2003), *repealed by* Or Laws 2005, ch 391, § 7, "to make it clearer").

4.   *Summary of ORS 90.392's history*

In sum, since the enactment of the ORLTA, there has been a statute governing "for cause" terminations, and it has always authorized two different types of terminations: (1) 30-day terminations with a 14-day cure period and (2) 10-day terminations with no cure period for certain repeat violations. Thus, the text of the statute has always indicated that a tenant has a right to cure violations on which a 30-day termination is based. That understanding is reflected in the legislative history regarding the notice requirements for "for cause" terminations. As mentioned, the original "for cause" termination statute did not expressly require that a termination notice state that a tenant could cure a violation on which a 30-day notice was based. *Former* ORS 91.820(1)(a) (1973). But, when an express requirement was added in 1989, it was explained

that a 30-day notice would have to "state the right to cure." Exhibit K, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, SB 602, May 15, 1989 (accompanying statement of Michael H. Marcus). It was also explained that the "right to cure" already existed and that the amendment was intended to make it clear that a termination notice had to inform a tenant of that right. Tape Recording, Senate Committee on Business, Housing and Finance, SB 602, Apr 11, 1989, Tape 63, Side A (statement of Michael H. Marcus). Later, in 2005, additional notice requirements were added. It was again explained that, "with a 30-day for-cause termination notice[,] the tenant has 14 days to cure the cause" and that a 30-day notice has to inform a tenant that "you have 14 days to cure [the violation]." Exhibit G, House Committee on Judiciary, Subcommittee on Civil Law, HB 2524, Mar 28, 2005 (accompanying statement of John VanLandingham); Tape Recording, Senate Committee on Rules, HB 2524, June 1, 2005 (statement of John VanLandingham). Thus, the legislative history indicates that it has long been understood that a tenant has a right to cure a violation on which a 30-day termination is based and that the notice for such a termination must inform the tenant of that right.

### E.   *Statutory Construction Conclusion*

Based on the text, context, and legislative history of ORS 90.392, we conclude that a tenant has a right to cure all violations that can be the basis for a 30-day termination under ORS 90.392(4) and that, when a tenant has that right to cure, ORS 90.392(3)(c) requires a termination notice to inform the tenant of that right. Under ORS 90.392(3)(c), a termination notice must state that a violation can be cured "[i]f the tenant can cure the violation as provided in subsection (4)." Viewed as a whole, the text of ORS 90.392 indicates that all violations can be cured "by a change in conduct, repairs, payment of money or otherwise" as provided in subsection (4), except for repeat violations that "[t]he tenant does not have a right to cure" under subsection (5). Thus, the text indicates that a notice must state that a violation can be cured when, as a matter of law, a tenant has a right to cure the violation. Context supports that understanding. The purpose of the ORLTA's notice requirements

is to inform a tenant of the scope of their rights and, therefore, the purpose of notice of the right to cure is to inform a tenant when they have that right. The legislative history confirms that ORS 90.392 should be construed as keeping with that purpose: The legislature created the requirement for notice of the right to cure to ensure that, when that right exists, the termination notice says so.

We recognize that there may be situations, like the one in this case, where a landlord may understandably believe that a tenant will not be able to cure a violation within the prescribed period. But, for the reasons explained above, we conclude that the legislature intended to require a "for cause" termination notice under ORS 90.392 to state that a violation can be cured whenever the tenant has a right to cure it, regardless of whether the landlord believes that the tenant will be able to exercise that right. Again, the purpose of the notice is to provide a tenant with information about their right to cure a violation, and that right exists for violations covered by ORS 90.392(4), regardless of whether the landlord reasonably believes that the tenant will be able to exercise that right. For example, a landlord might reasonably believe that a tenant lacks the financial resources to pay a fee, but if the tenant acquires those resources and pays the fee within the prescribed period, the tenant will have cured the violation and the rental agreement will not terminate. Given that the right to cure is not up to the landlord, we do not believe that the legislature intended notice of the right to cure to be up to the landlord.

Moreover, we do not believe that the notice requirements—including the requirements to identify one possible cure and specify the deadline for the cure, which were added in 2005 as a result of a bill proposed by the General Landlord-Tenant Coalition—are onerous. As the spokesperson for the coalition stated, using the example of an unpaid charge, a notice could state, "To avoid this termination, you must pay the late charge [a cure] by June 15 [the cure date], or your tenancy will terminate on July 1." Exhibit H, Senate Committee on Rules, HB 2524, June 1, 2005 (accompanying statement of John VanLandingham). In a case like this one, which involves property damage, the notice could describe

the damage and state that the damage must be repaired by a specified date, no less than 14 days after delivery of the notice. If the tenant failed to repair the damage by that date, the rental agreement would terminate on a later, specified date, no less than 30 days after delivery of the notice.

It bears emphasizing that, in this case, landlord proceeded under ORS 90.392. As mentioned at the outset, under the ORLTA, there are different types of rental agreement terminations, including terminations under ORS 90.396, which have a minimum 24-hour termination period. Those terminations can be based on conduct that is outrageous in the extreme, some of which cannot be cured as a matter of law. If a tenant's conduct falls into that category, then the termination notice would not have to state that the violation could be cured.

F.  *Application*

Applying that understanding tthe facts in this case, we conclude that landlord's notice was invalid for failing to include notice of the opportunity to cure as required by ORS 90.392(3)(c). Landlord's notice stated that tenant had committed a material violation of the rental agreement in causing "extensive" damage to the premises and that, for that violation, the rental agreement would terminate for cause upon a designated date not less than 30 days after delivery of the notice. The notice did not allege that the violation was a repeat violation covered by subsection (5). Accordingly, tenant had a right to cure the violation, and the notice was required to inform the tenant of that right, by "stat[ing] that the violation can be cured, describ[ing] at least one possible remedy to cure the violation and designat[ing] the date by which the tenant must cure the violation." ORS 90.392(3)(c). Because the notice did not do so, it was invalid. Therefore, we conclude that the trial court erred in denying tenant's motion to dismiss. *See Hickey*, 370 Or at 112 (explaining that "an FED action based on an invalid termination notice is subject to dismissal" because "the claim itself is invalid"); *Ostlund*, 289 Or at 549-50 (same).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.